HURST, Appellant,

v.

ENTERPRISE TITLE AGENCY, INC. et al., Appellees.

[Cite as *Hurst v. Enterprise Title Agency, Inc.*, 157 Ohio App.3d 133, 2004-Ohio-2307.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2002–L–156.

Decided May 7, 2004.

---

9. *In re Stillman,* 155 Ohio App.3d 333, 2003-Ohio-6228, 801 N.E.2d 475.

134

136

Ron M. Tamburrino, for appellant.

Reminger & Reminger Co., L.P.A., and Andrew A. Kabat and Joseph W. Borchelt, for appellees.

DIANE V. GRENDELL, Judge.

{¶ 1} Lisa Hurst appeals the September 13, 2002 judgment entry of the Lake County Court of Common Pleas granting summary judgment in favor of Enterprise Title Agency, Inc. ("Enterprise") and Pamela Knazek (together, the "appellees"). For the reasons set forth below, we affirm the judgment of the trial court.

{¶ 2} In the process of searching for a home to purchase, Hurst contacted Georgia Petty, an agent of Smythe Cramer Co. ("Smythe Cramer"). In September 1999, Hurst viewed the home of Frankie and Jacob Lowe. The Lowes' residence was listed with Smythe Cramer. Hurst inquired about certain condi-

tions observed in the Lowes' home, specifically a sloped kitchen floor and a warped living room ceiling. Frankie Lowe responded that the kitchen floor had always been sloped and that the warped ceiling could easily be repaired by replacing the drywall.

{¶ 3} Hurst subsequently agreed to purchase the residence for $115,000. However, because she was unable to obtain financing, the Lowes and Hurst entered into a land sale contract. The contract required Hurst to give the Lowes a down payment of $8,000 and make monthly payments thereafter. Hurst was further required to obtain financing within three years to pay the balance. The Lowes would maintain title to the property until the balance of the purchase price was paid.

{¶ 4} Enterprise was retained by the parties as the escrow agent, with Knazek handling the transaction as the agent. The escrow agreement executed by the parties stated that Enterprise "assumes no responsibility as to * * * compliance with any local or municipal requirements, point of sale inspections or ordinances."

{¶ 5} After taking possession of the residence, Hurst discovered several problems, including water damage and plumbing and electrical problems. As a result of the discovered damages, Hurst filed a complaint for declaratory relief, rescission of the land sale contract, and damages against the appellees.[1] Hurst eventually amended her complaint to include claims for negligence, negligence per se, breach of fiduciary duties, breach of contract, and violations of the Ohio Consumer Sales Protection Act ("CSPA"). The appellees and Hurst both filed motions for summary judgment. On September 13, 2002, the trial court granted the appellees' motion while denying Hurst's motion.

{¶ 6} Hurst timely appealed and raises the following assignments of error:

{¶ 7} "[1.] The trial court erred in granting defendants' motion for summary judgment and in denying plaintiff's motion for summary judgment on plaintiff's claim for declaratory judgment where the closing escrow agreement is unenforceable as a matter of law.

{¶ 8} "[2.] The trial court erred in granting defendants' motion for summary judgment and in denying plaintiff's motion for summary judgment where defendants were negligent per se.

{¶ 9} "[3.] The trial court erred in granting defendants' motion for summary judgment and in denying plaintiff's motion for summary judgment where defendants breached the closing escrow agreement.

---

1. Also named as defendants in the initial complaint were Frankie Lowe, Smythe Cramer, Petty, and Nationwide Mutual Fire Insurance Company. After reaching a settlement with these parties, Hurst dismissed them from the suit.

{¶ 10} "[4.] The trial court erred in granting defendants' motion for summary judgment and in denying plaintiff's motion for summary judgment where the closing escrow agreement violated CSPA.

{¶ 11} "[5.] The trial court erred in granting defendants' motion for summary judgment and in denying plaintiff's motion for summary judgment where defendants breached their fiduciary duty to plaintiff."

{¶ 12} Because each of Hurst's assignments of error challenges the trial court's granting of the appellees' motion for summary judgment, we will first set forth the applicable standard of review. Summary judgment is appropriate when there is "no genuine issue as to any material fact [and] * * * reasonable minds can come to but one conclusion," which is adverse to the nonmoving party. Civ.R. 56(C). In reviewing a motion for summary judgment, the court must construe the evidence in favor of the nonmoving party. Id. Moreover, an appellate court conducts a de novo review of the trial court's decision to grant summary judgment. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

{¶ 13} Before specifically addressing Hurst's assignments of error, we must first address the appellees' contention that a point-of-sale inspection pursuant to a Mentor–on–the–Lake ordinance is required only upon the transfer of title of property. Thus, the appellees claim that, since the title of the residence would not transfer to Hurst until she fulfilled her obligations under the land sale contract, a point-of-sale inspection would not be required until Hurst completed her contract obligations.

{¶ 14} Section 1464.07 of the Mentor–on–the–Lake ordinance provides that an escrow agent shall not "file for record an instrument to transfer title thereto or disburse any funds from such sale, unless the provisions of this chapter have been satisfied, including, but not limited to, the specific provisions of Section 1464.05." Section 1464.05 requires the seller, upon "transfer[ing] or convey[ing] *any interest* in a dwelling structure, * * * [to] provid[e] the purchaser or prospective purchaser with a current certificate of inspection." (Emphasis added.)

{¶ 15} Although the Lowes would maintain legal title to the property until Hurst performed all her obligations under the land sale contract, see *Blue Ash Bldg. & Loan Co. v. Hahn* (1984), 20 Ohio App.3d 21, 23, 20 OBR 22, 484 N.E.2d 186, an equitable interest in the property was conveyed to Hurst upon the execution of the contract. Id. at 24, 20 OBR 22, 484 N.E.2d 186; *Thornton v. Guckiean & Co., Inc.* (1991), 77 Ohio App.3d 794, 798, 603 N.E.2d 1066, citing *Basil v. Vincello* (1990), 50 Ohio St.3d 185, 189, 553 N.E.2d 602. Thus, because the land sale contract did, in fact, "convey[ ] a present ownership interest in realty" to Hurst, *Riverside Builders, Inc. v. Bowers* (June 7, 1990), 10th Dist. No. 89AP–834, 1990 WL 75433, at * 4, we agree with the trial court's conclusion that

the appellees "had a duty to comply with the relevant ordinances (including the required point of sale inspection), prior to filing a transfer of title or disbursing funds from the sale."

{¶ 16} We must now address Hurst's assignments of error. In her first assignment of error, Hurst argues that the exculpatory language contained in the escrow agreement is unconscionable and in violation of public policy. Thus, Hurst claims that the agreement is unenforceable.

{¶ 17} Although attempts to limit or excuse liability are disfavored in law, limiting or exculpatory language in a contract will be enforced unless that language is unconscionable, in violation of important public policy considerations, or vague and ambiguous. *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 832, 621 N.E.2d 1294; *Conkey v. Eldridge* (Dec. 2, 1999), 10th Dist. No. 98AP–1628, 1999 WL 1080120, at * 6. In this case, the exculpatory language is not vague and ambiguous, nor does Hurst argue that it is. Thus, we must determine whether the exculpatory language is unconscionable or in violation of public policy.

{¶ 18} The inclusion of an exculpatory clause in a contract, generally, does not violate public policy. *Glaspell v. Ohio Edison Co.* (1987), 29 Ohio St.3d 44, 46, 29 OBR 393, 505 N.E.2d 264; *Swartzentruber v. Wee–K Corp.* (1997), 117 Ohio App.3d 420, 424, 690 N.E.2d 941. Application of this general rule, however, is not absolute. See, e.g., *Dennis v. Smith* (1932), 125 Ohio St. 120, 180 N.E. 638. "In considering whether a provision in a contract is against 'public policy[,]' * * * we must remember that the freedom to contract is fundamental, and that we should not lightly disregard a binding agreement, unless it clearly contravenes some established or otherwise reasonable public interest." *Zivich v. Mentor Soccer Club, Inc.* (Apr. 18, 1997), 11th Dist. No. 95–L–184, 1997 WL 203646, at * 10. In so considering, we examine "whether the goods or services contracted for are necessary for a person's living needs; whether the supplier assumes a quasi-public function in providing the goods [or services]; whether the supplier has been granted a monopoly in providing a specific service; and whether the limitation provision is such that the customer is in a position to assent to its terms." *Collins,* 86 Ohio App.3d at 832, 621 N.E.2d 1294.

{¶ 19} In this case, it cannot be argued that the services of an escrow agent are necessary for a person's living needs, nor can these services be qualified as quasi-public in nature. Moreover, there is no evidence in the record that Enterprise has a monopoly in providing escrow services. Finally, the record is void of any evidence that Hurst was precluded from bargaining to have this provision removed. Further, even if Enterprise refused to remove the exculpatory language, nothing would have prevented Hurst from obtaining the services of other

available escrow agents. We, therefore, find that the exculpatory language in the contract at issue is not void as against public policy. See id., 86 Ohio App.3d at 833, 621 N.E.2d 1294. Thus, the exculpatory language must be given effect unless the provision is unconscionable.

{¶ 20} "Unconscionability is a question of law." *Ins. Co. of N. Am. v. Automatic Sprinkler Corp. of Am.* (1981), 67 Ohio St.2d 91, 98, 21 O.O.3d 58, 423 N.E.2d 151. "Under Ohio law, a contract clause is unconscionable where one party has been misled as to its meaning, where a severe imbalance of bargaining power exists, or where the specific contractual clause is outrageous. * * * Unconscionability is generally recognized to include an absence of meaningful choice on the part of one of the parties to a contract, combined with contract terms that are unreasonably favorable to the other party. * * *" (Citations omitted.) *Cross v. Carnes* (1998), 132 Ohio App.3d 157, 169–170, 724 N.E.2d 828.

{¶ 21} Unconscionability embodies two separate concepts: (1) substantive unconscionability, i.e., "those factors which relate to the contract terms themselves and whether they are commercially reasonable," *Collins*, 86 Ohio App.3d at 834, 621 N.E.2d 1294, and (2) procedural unconscionability, i.e., "those factors bearing on the relative bargaining position of the contracting parties." *Cross*, 132 Ohio App.3d at 170, 724 N.E.2d 828. To establish unconscionability, the party claiming it must allege and prove both prongs. *Collins*, 86 Ohio App.3d at 834, 621 N.E.2d 1294.

{¶ 22} In this case, Hurst fails to establish the existence of either substantive or procedural unconscionability. There is no indication that the exculpatory language is commercially unreasonable. In fact, considering Enterprise's fee for their services, $200, and the potential liability at issue, $335,000, the inclusion of the exculpatory language in the contract is commercially reasonable. See *Collins*, 86 Ohio App.3d at 834–835, 621 N.E.2d 1294. The exculpatory language is, therefore, not substantively unconscionable.

{¶ 23} Although Hurst claims that she was in an inferior bargaining position, the evidence fails to support her claim that the exculpatory language was procedurally unconscionable. There is no indication that Hurst was unable, because of time or capability, to read and comprehend the agreement. Further, there is no evidence that she could not have changed the clause. In fact, Hurst failed to inquire or engage Enterprise in any conversation, let alone negotiations, regarding the terms of the agreement. Rather, she simply read and signed the agreement and, thereby, ostensibly agreed to its terms. We agree with the trial court that Hurst's "failure to adequately protect her own interests does not render the contract disclaimer unconscionable." We, therefore, find that the

exculpatory language was not procedurally unconscionable.[2] See id., 86 Ohio App.3d at 835–836, 621 N.E.2d 1294; *Waterford Products Co. v. Victor* (Dec. 17, 1999), 11th Dist. No. 98–L–029, 1999 WL 1313664, at *9 (in failing to find an exculpatory clause unconscionable, we noted that the transaction was "conducted without duress"); *Conkey,* 1999 WL 1080120, at *7; *Hall v. Woodland Lake Leisure Resort Club, Inc.* (Oct. 15, 1998), 4th Dist. No. 97 CA 945, 1998 WL 729197, at *8 ("merely averring an inequality of bargaining power is generally insufficient to establish procedural unconscionability").

{¶ 24} For the foregoing reasons, we find that the trial court did not err in finding the agreement, including the exculpatory language, enforceable. Hurst's first assignment of error is without merit.

{¶ 25} In her second assignment of error, Hurst argues that the appellees' failure to comply with section 1464.05 of the Mentor–on–the–Lake ordinance constitutes negligence per se.

{¶ 26} If a statute does not provide for civil liability, "the question of whether violation of the statute constitutes negligence per se depends on the enactment itself." *Mussivand v. David* (1989), 45 Ohio St.3d 314, 319, 544 N.E.2d 265. Thus, "[w]here there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se; but where there exists a legislative enactment expressing for the safety of others, in general or abstract terms, a rule of conduct, negligence per se has no application and liability must be determined by the application of the test of due care as exercised by a reasonably prudent person under the circumstances of the case." *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367, 53 O.O. 274, 119 N.E.2d 440, paragraph three of the syllabus. Moreover, in order "for a violation of a statute to constitute negligence per se, the injured person must be part of the class the statute was designed to protect." *Community Ins. Co. v. Hambden Twp.* (Sept. 30, 1998), 11th Dist. No. 97–G–

---

2. The dissent would find the existence of procedural unconscionability based upon the fact that Hurst did not receive a college education and that she was purchasing a home for the first time. Although education and experience are factors to consider in determining whether a clause is procedurally unconscionable, *Cross v. Carnes* (1998), 132 Ohio App.3d 157, 170, 724 N.E.2d 828, an individual is presumed competent to contract. *Buzzard v. Pub. Emp. Retirement Sys. of Ohio* (2000), 139 Ohio App.3d 632, 637, 745 N.E.2d 442. Therefore, we do not hold that a clause in a real estate contract is procedurally unconscionable merely because one of the parties is a high school graduate who is purchasing his or her first home. To do so would render any contract clause that is disadvantageous to an otherwise competent first-time home buyer from having any force. "[W]e must remember that the freedom to contract is fundamental, and that we should not lightly disregard a binding agreement." *Zivich v. Mentor Soccer Club, Inc.* (Apr. 18, 1997), 11th Dist. No. 95–L–184, 1997 WL 203646, at *10.

2092, 1998 WL 682385, at * 6, citing *Marsh v. Koons* (1908), 78 Ohio St. 68, 84 N.E. 599, paragraph one of the syllabus.

{¶ 27} "[I]nspection ordinances such as point-of-sale ordinances are enacted to maintain and enhance housing standards" and to protect the health and safety of the residents. *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 3, 534 N.E.2d 835. These ordinances are not intended to establish a duty towards any resident. Id. Thus, because Hurst seeks economic recovery for the claimed defects that purportedly would have been revealed in a point-of-sale inspection, rather than recovery for an injury to her health and safety, Hurst is not a member of the class the ordinance seeks to protect. Henceforth, the trial court did not err in granting summary judgment in favor of the appellees regarding Hurst's negligence per se claim.

{¶ 28} Hurst's second assignment of error is without merit.

{¶ 29} In her third assignment of error, Hurst argues that the appellees were not entitled to summary judgment on Hurst's breach-of-contract claim. Hurst argues that because the exculpatory language is unconscionable and/or against public policy and, thus, is unenforceable, the contract should be implemented as if the exculpatory language did not exist.

{¶ 30} In order to successfully prosecute a breach-of-contract claim, the plaintiff must present evidence establishing "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 600, 649 N.E.2d 42.

{¶ 31} In this case, because we determined above that the exculpatory language was valid, we must give the entire contract full force. A review of the escrow agreement, including the exculpatory language, establishes that the appellees had no obligation regarding the requisite point-of-sale inspection. Rather, the land sale contract clearly placed any obligation in regard to the point-of-sale inspection on the Lowes. Although the escrow agreement required the appellees to carry out the instructions contained in the land sale contract, neither the escrow agreement nor the land sale contract required the appellees to hold any funds until they were presented with a point-of-sale inspection certificate. Instead, the land sale contract required the appellees to release all funds in accordance with that contract, which the appellees did. Thus, we find that Hurst failed to establish that the appellees breached the escrow agreement. The trial court, therefore, did not err in granting summary judgment in favor of the appellees on Hurst's breach-of-contract claim.

{¶ 32} Hurst's third assignment of error is without merit.

{¶ 33} In her fourth assignment of error, Hurst argues that the appellees committed an unfair act in violation of the CSPA by failing to ensure that the point-of-sale inspection was performed and by inserting the exculpatory language in the escrow agreement.

{¶ 34} "The CSPA * * * prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions." *Colburn v. Baier Realty & Auctioneers*, 11th Dist. No. 2002–T–0161, 2003-Ohio-6694, 2003 WL 22931379, at ¶ 13. The CSPA, however, "has no application in a 'pure' real estate transaction." *Brown v. Liberty Clubs, Inc.* (1989), 45 Ohio St.3d 191, 193, 543 N.E.2d 783. A collateral service solely associated with the sale of real estate is a pure real estate transaction. See *Colburn*, 2003-Ohio-6694, 2003 WL 22931379, at ¶ 16 (wherein this court held that an auctioneer's service in the sale of real estate was a pure real estate transaction). The CSPA, therefore, is not applicable to those collateral services. Id.

{¶ 35} In this case, similar to *Colburn*, the appellees' escrow services were collateral to the real estate transaction. The appellees were merely acting as an intermediary to effectuate the sale of the real estate. Accordingly, the CSPA is inapplicable in this case.

{¶ 36} Even if the CSPA were applicable in this case, summary judgment would still have been appropriate. The inclusion of a disclaimer in a contract, without more, clearly does not constitute a violation of the CSPA. Moreover, because we found that the specific exculpatory language utilized in this case was, as a matter of law, valid and enforceable, we are loath to now hold that including this language in the contract was an unfair or deceptive act or an unconscionable act or practice.

{¶ 37} The trial court, therefore, did not err in granting summary judgment in favor of the appellees in regard to Hurst's CSPA claims. Hurst's fourth assignment of error is without merit.

{¶ 38} In her final assignment of error, Hurst claims that the appellees owed her a fiduciary duty. Thus, Hurst argues, the appellees' failure to follow the mandates of the Mentor–on–the–Lake ordinance regarding the point-of-sale inspection violated this duty.

{¶ 39} "A 'fiduciary' has been defined as ' "a person having a duty, created by his undertaking, to act *primarily for the benefit of another* in matters connected with his undertaking." ' " (Emphasis sic.) *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235. A breach-of-fiduciary-duty claim essentially is a negligence claim involving a higher standard of care. Id. Thus,

the party asserting such a breach must establish the existence of a fiduciary duty, a breach of that duty, and an injury proximately resulting therefrom.   Id.

{¶ 40} An escrow agent "is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his hands." *Pippin v. Kern–Ward Bldg. Co.* (1982), 8 Ohio App.3d 196, 198, 8 OBR 266, 456 N.E.2d 1235, citing *Squire v. Branciforti* (1936), 131 Ohio St. 344, 6 O.O. 59, 2 N.E.2d 878. The escrow agent owes the parties a duty "to carry out the terms of the agreement as intended by the parties."   Id.

{¶ 41} In this case, as discussed above, the Lowes, solely, were responsible for ensuring the performance of any required inspections.   Moreover, neither the escrow agreement nor the land sale contract required the appellees to hold any funds until they were presented with a point-of-sale inspection certificate.   When the mutual obligations of the land sale contract, as dictated in the contract, were satisfied, the appellees released the funds as directed by the agreement.   Thus, the appellees satisfied their duty by carrying out the terms of the agreement as intended by Hurst and the Lowes.[3]   The trial court, therefore, did not err in granting summary judgment in favor of the appellees on Hurst's breach-of-fiduciary-duty claim.

{¶ 42} Hurst's fifth assignment of error is without merit.

{¶ 43} For the foregoing reasons, we hold that Hurst's assignments of error are without merit.   The judgment of the Lake County Court of Common Pleas is affirmed.

Judgment affirmed.

CYNTHIA WESTCOTT RICE, J., concurs.

WILLIAM M. O'NEILL, J., dissents with a dissenting opinion.

---

**3.**   In essence, the dissent would find that the appellees breached their fiduciary duty by failing to comply, or by failing to ensure that the Lowes complied, with the city ordinance.   Although the failure to follow the mandates of the city ordinance may have resulted in a breach of a *statutory* duty, we do not find a similar breach of a *fiduciary* duty.   Unlike a duty that arises from a statute, in this case to have the point-of-sale inspection prior to the transfer of title, a fiduciary duty arises from a *relationship* "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 282, 617 N.E.2d 1075. Although a statute or ordinance can create a fiduciary duty, it must expressly so state.   See id. at 283, 617 N.E.2d 1075.   In this case, the city ordinance does not mention any fiduciary duty.   Thus, we do not find that the breach of the statutory duty created by the city ordinance also results in a breach of a fiduciary duty.

WILLIAM M. O'NEILL, Judge, dissenting.

{¶ 44} I must respectfully dissent. In her fifth assignment of error, Hurst contends that appellees breached their fiduciary duty to her. I agree.

{¶ 45} A layperson sought professional assistance to complete a real estate transaction. The professional failed to perform a duty imposed by law, which could have protected the purchaser's interests. When the purchaser sought compensation through this lawsuit, her claims were summarily dismissed by the trial court.

{¶ 46} Section 1464.07 of the Mentor-on-the-Lake city ordinances is titled "obligations of escrow agents" and states:

{¶ 47} "No person, firm or corporation acting in the capacity of an escrow agent in any real estate transaction involving the bona fide sale or conveyance of any interest in a dwelling structure, commercial building structure or other building, or land upon which such buildings are located, in the City, shall file for record an instrument to transfer title thereto or *disburse any funds from such sale,* unless the provisions of this chapter have been satisfied, including, but not limited to, the specific provisions of Section 1464.05." (Emphasis added.)

{¶ 48} Section 1464.05 provides:

{¶ 49} "(a) No person, agent, firm or corporation shall, in a bona fide sale for a good and valid consideration, transfer or convey any interest in a dwelling structure, commercial building structure or other building, or land upon which such buildings are located, without first providing the purchaser or prospective purchaser with a current certificate of inspection or an exact copy thereof as provided in this chapter.

{¶ 50} "(b) The seller shall deposit in escrow a statement signed by the purchaser acknowledging receipt of the certificate of inspection, and such signed statement shall list thereon the date the certificate was given to the purchaser.

{¶ 51} "(c) If, under the terms of the contract of sale, the seller is obligated to correct all violations listed on the certificate of inspection, the seller shall deposit in escrow, before transfer of title to the purchaser, either a compliance document as described in Section 1464.03 and/or a written statement agreed upon by the seller and the purchaser filed with the escrow agent setting forth an agreed upon sum of money that is sufficient to cover the costs of correcting those specific violations listed on the certificate of inspection which remain uncorrected."

{¶ 52} Obviously, appellees did not wish to comply with these ordinances. They included language in the escrow contract that stated that they did not have to follow the law. That action breached their fiduciary duty to Hurst.

{¶ 53} "The depositary under an escrow agreement is an agent of both parties, as well as a paid trustee with respect to the purchase money funds placed in his

hands."[4] Knazek recognized her role in this dual representation, stating in her deposition, "I know I work for both sides * * *." She explained that she represented all parties, including the buyer, the seller, and the realtor.

{¶ 54} A fiduciary has a duty to act primarily for the benefit of another.[5] Appellees were retained by Petty, who was retained by Hurst. In her deposition, Knazek acknowledged that she represented Hurst, among others, in the transaction. Thus, as an escrow agent, appellees owed a fiduciary duty to Hurst.

{¶ 55} The majority holds that neither the land sale contract nor the escrow agreement required appellees to hold funds until a point-of-sale inspection was completed. I agree. However, Mentor–on–the–Lake municipal ordinance sections 1464.05 and 1464.07 clearly place this duty on appellees.

{¶ 56} In addition, the majority holds that only the Lowes were responsible for ensuring that any required inspections were preformed. While the Lowes, as sellers, did have a duty to make sure a point-of-sale inspection was performed, *appellees* were responsible for ensuring that the Lowes satisfied this duty.

{¶ 57} Appellees breached their fiduciary duty to Hurst by including a disclaimer in the escrow contract that was inherently against her interests. As a matter of law, attempting to excuse a duty through a disclaimer placed on the agent by law, which benefits the purchaser, is breaching the fiduciary duty that the escrow agent owes to the purchaser.

{¶ 58} The trial court erred by entering summary judgment in favor of appellees on the issue of a breach of fiduciary duty.

{¶ 59} In her first assignment of error, Hurst contends that the closing escrow agreement was unenforceable as a matter of law. Specifically, Hurst argues that the contract clause waiving liability on behalf of appellees regarding compliance with city ordinances is unconscionable. I agree.

{¶ 60} There are two prongs that must be met for a successful claim of unconscionability.[6] A substantive unconscionability analysis considers whether the actual terms of the contract are commercially reasonable.[7] "Procedural

---

4.  *Pippin v. Kern–Ward Bldg. Co.* (1982), 8 Ohio App.3d 196, 198, 8 OBR 266, 456 N.E.2d 1235, citing *Squire v. Branciforti* (1936), 131 Ohio St. 344, 6 O.O. 59, 2 N.E.2d 878.

5.  See, e.g., *Strock v. Pressnell* (1988), 38 Ohio St.3d 207, 216, 527 N.E.2d 1235.

6.  *Cross v. Carnes* (1998), 132 Ohio App.3d 157, 170, 724 N.E.2d 828, quoting *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App.3d 826, 834, 621 N.E.2d 1294.

7.  *Jeffrey Mining Prod., L.P. v. Left Fork Mining Co.* (2001), 143 Ohio App.3d 708, 718, 758 N.E.2d 1173, citing *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.* (1996), 113 Ohio App.3d 75, 80, 680 N.E.2d 240.

unconscionability involves those factors bearing on the relative bargaining position of the contracting parties, including their age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible."[8]

{¶ 61} This contract clause was substantially unconscionable. It permitted appellees to circumvent their duties prescribed by the Mentor–on–the–Lake city ordinances. Moreover, the clause was unreasonably unfair to Hurst, as it permitted the transaction to proceed without requiring a city inspection to take place.

{¶ 62} In addition, the contract clause was procedurally unconscionable. In her deposition, Hurst testified that she was a high school graduate. She indicated that she had no other real estate experience. These factors are indicative of Hurst's relative disadvantageous bargaining position. Meanwhile, appellees drafted the contract. Appellees were in the business of serving as escrow agents to complete real estate transactions of this nature. Finally, Knazek stated that she was aware of the city ordinance sections regarding point-of-sale inspections. Accordingly, appellees had a much stronger bargaining position.

{¶ 63} The trial court found that Hurst consented to the terms of the contract because she read and signed the document without asking any questions to anyone at Enterprise. As previously noted, as the escrow agent, appellees were acting in a dual agency capacity. In the words of Knazek, they were representing Hurst, the Lowes, and Smythe Cramer. Why would Hurst have any reason to question whether appellees, supposedly acting in *her* best interest, intentionally included language in the contract to circumvent their duties pursuant the city ordinance to her detriment?

{¶ 64} The majority ratifies the trial court's reasoning, noting that Hurst could have negotiated with appellees or even changed the language of the clause. Again, appellees represented Hurst in this transaction. If an individual sought the advice of an attorney to draft a complicated commercial transaction, would the individual be required to meticulously question every clause of the agreement and *negotiate* with *his* attorney to make sure the contract is not inherently unfair to *him*? Of course not. The individual sought legal assistance with the assumption that the professional would zealously represent his interests. The same is true in the case sub judice.

---

8.  *Cross v. Carnes,* 132 Ohio App.3d at 170, 724 N.E.2d 828, citing *Collins v. Click Camera & Video, Inc.,* 86 Ohio App.3d at 834, 621 N.E.2d 1294.

{¶ 65} Appellees' inclusion of a disclaimer attempting to excuse a duty imposed upon them by the Mentor–on–the–Lake city ordinances renders this contract clause unconscionable. The trial court erred by entering summary judgment in favor of appellees on this issue.

{¶ 66} I would reverse the trial court's judgment regarding Hurst's breach-of-fiduciary-duty and unconscionability claims.