OPINION
{¶ 1} Appellant, Jonas Hershberger, appeals from the decision of the trial court to award appellee, Renken Enterprises, summary judgment in the amount of $10,800.
 {¶ 2} In November 1984, Cameron R. Klinck ("Klinck"), a timber broker for forty years, purchased timber in Vienna Township. At the time of purchase, Klinck contacted the owner of the adjacent real estate, Renken Enterprises ("Renken"), to negotiate an easement for use of their oil access road ("access road"). Klinck offered Renken $500 for the easement, and after a favorable response Klinck stated he would be in contact to solidify the agreement.
 {¶ 3} Prior to making the final arrangements for the easement, Klinck showed the property to appellant, an Amish gentleman who owned a lumber manufacturing business. Klinck agreed to assign his timber rights to appellant for $60,000 and stated that appellant would be able to access the property via the access road.
 {¶ 4} Appellant began his timber operation in late November on the assumption that he had the right to use the access road. The evidence in the record indicates that he extended the access road on the Renken property by installing a four foot culvert across a creek thereon, and by spreading two loads of gravel to improve the road. Nothing in the record indicates that the Renken property had any use, apart from an oil well and oil storage tanks. Nothing in the record indicates that the oil well or storage tanks were harmed or interfered with in any manner. Appellant placed a temporary barn for his horses — used to hall timber — and a bulldozer, or front end loader, on the Renken property, as well as storing his manufactured lumber there.
 {¶ 5} On the morning of December 14, 1994, Frank Bodor ("Bodor"), attorney for Renken Enterprises, entered the land and told appellant that he was criminally trespassing on Renken land. Appellant explained he had an easement to cross the property to which Bodor replied no easement existed. Bodor then told appellant that he had until four o'clock that afternoon to remove his men and equipment at which time the access road would be blocked.
 {¶ 6} Later the same day, appellant and Klinck went to Bodor's office to discuss the matter. Klink intended to apologize to Bodor for the misunderstanding and offer to pay for continued use of the road. Bodor explained the prior $500 offer for the easement was no longer available, and the cost was now $12,000. Klinck had never paid more than $700 for use of an access road; appellant had never paid more than $1,500. After expressing numerous profanities, Klinck was asked to leave the office, but appellant elected to stay and attempt to resolve the dispute.
 {¶ 7} During the remainder of appellant's time in Bodor's office, he did not have a lawyer present. Bodor attempted to contact appellant's lawyer, Martin F. White ("White"), but the lawyer was unreachable. Appellant wanted to resolve the matter promptly so as not to delay providing work for his men. Appellant agreed to pay Renken $10,800 for, among other things, a license or easement to continue to use the road. In addition, appellant promised to construct a new fence. At the close of the meeting, appellant wrote check number 2075 to Bodor for Renken in the amount of $10,800. Other than the check, there was no other documentation of the agreement and its terms.
 {¶ 8} Appellant discussed the matter with attorney Martin White after leaving Bodor's office. White advised appellant to stop payment on the check. Appellant stated he had promised to pay that money, and it was a deal. It was not until appellant was accused by a third party of stopping payment, that he cancelled the check. Klinck then helped appellant arrange new access to the timber.
 {¶ 9} On January 3, 1995, Renken filed a complaint against Klinck, appellant, and the trucking company used to haul out the timber. The basic allegations of the complaint were that defendants had trespassed on Renken land causing damage to the property, and that appellant had reneged on the settlement of the matter by stopping payment on his check for $10,800. Renken sought compensatory damages for $10,000 as well as damages for the breach of contract by appellant in the amount of $10,800. In appellant's answer, he denied causing any damage to the Renken property but did admit to using the access road. He also admitted to writing the $10,800 check but claimed he was fraudulently induced into issuing it.
 {¶ 10} On October 23, 1998, having submitted the case to compulsory arbitration, the arbitrator ruled in favor of plaintiff, Renken. The arbitration decision was taken to the trial court. In October 2000, the trial court referred the case to the magistrate. On April 25, 2001, Renken filed a motion for summary judgment based on its fourth cause of action, i.e., that a settlement agreement existed between Renken and appellant as evidenced by appellant writing and delivering the check to Bodor for $10,800. The magistrate granted summary judgment in Renken's favor on March 24, 2004.
 {¶ 11} The magistrate found the agreement was neither unconscionable, nor did appellant enter into the agreement under duress. The magistrate ruled that, regardless of whether the agreement was good or bad, appellant had negotiated and issued a check for complete resolution of the dispute. The magistrate ordered that the settlement between appellant and Renken be enforced, and appellant to pay a total amount of $10,800. Appellant's timely objections were filed on April 1, 2004. The trial court adopted the magistrate's decision on June 14, 2004.
 {¶ 12} On appeal, Appellant raises the following assignments of error:
 {¶ 13} "[1.] Whether the trial court erred by concluding that reasonable minds could not differ as to whether the agreement was unconscionable.
 {¶ 14} "[2.] Whether the trial court erred by concluding that Defendant Hershberger did not enter into the agreement under duress."
 {¶ 15} Under the first assignment of error, appellant challenges the trial court's decision that there was no issue of material fact regarding whether the agreement was unconscionable. According to Civ.R. 56(C), in order to obtain a grant of summary judgment the moving party must prove there is no genuine issue of material fact in the case; that the moving party is entitled to judgment as a matter of law; and, based on the evidence presented, reasonable minds can come to but one conclusion, which conclusion is adverse to the non-moving party.
 {¶ 16} Appellate review of whether the trial court properly granted summary judgment involves questions of law and is reviewed de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. The Ohio Supreme Court stated in Dresher v.Burt (1996), 75 Ohio St.3d 280, that in a summary judgment exercise the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. If the moving party fails to satisfy this burden, then the motion for summary judgment must be denied. If the moving party does satisfy this burden, then the burden shifts to the non-moving party who must set forth specific facts demonstrating there is a genuine issue for trial. Id. at 293.
 {¶ 17} Appellant argues that the provision of the settlement agreement for payment of the sum of $10,800 was unconscionable. "`Unconscionability is a question of law.'" (Citation omitted.)Hurst v. Enterprise Title Agency, Inc., 157 Ohio App.3d 133,2004-Ohio-2307, at ¶ 20. "Because the determination of whether a contract is unconscionable is a question of law for the court, a factual inquiry into the particular circumstances of the transaction in question is required." Eagle v. Fred Martin MotorCo., 157 Ohio App.3d 150, 2004-Ohio-829, at ¶ 13. Whether a particular contract is unconscionable is reviewed de novo. Id.
 {¶ 18} "Unconscionability embodies two separate concepts: (1) substantive unconscionability * * * and (2) procedural unconscionability * * *." (Internal citations omitted.) Hurst
at ¶ 21. To establish unconscionability, the party claiming it must demonstrate both substantive and procedural unconscionability. Id.
 {¶ 19} "Substantive unconscionability refers to the actual terms of the agreement. Contract terms are unconscionable if they are unfair and commercially unreasonable." Porpora v. GatliffBuilding Co., 160 Ohio App.3d 843, 2004-Ohio-2410, at ¶ 8.
 {¶ 20} "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds was possible." Porpora at ¶ 7. "In order to determine whether or not a contract provision is procedurally unconscionable, courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed." Id. In considering the relative bargaining positions of each party for purposes of procedural unconscionability, courts should look to the age, education, and experience of the parties, and which party drafted the agreement, amongst other factors. Collins v. Click Camera Video, Inc.
(1993), 86 Ohio App.3d 826, 834. Courts should consider whether the party with inferior bargaining power was misled. Taylor v.Eggleston (June 4, 1993), 11th Dist. No. 92-A-1742, 1993 Ohio App. LEXIS 2869, at 4.
 {¶ 21} Accepting, for the instance, the validity of the trial court's conclusion that $800 of the check written to Bodor by appellant was for a license to continue using the oil access road, and $10,000 was for trespass damages, it seems clear that the subject agreement was substantively unconscionable. On the only evidence before the trial court — the testimony of appellant and Klinck — $800 would be a commercially reasonable amount to pay for a license to use the oil access road for hauling lumber. However, the law of Ohio requires that a party seeking more than nominal damages for a trespass prove the amount of the damages.Allstate Fire Ins. Co. v. Singler (1968), 14 Ohio St.2d 27, 29. In the case sub judice, there is simply nothing to show that $10,000 is commercially reasonable damages for the trespass committed by appellant. It was appellee Renken's duty to prove its compensatory damages in trespass; it failed to provide any measure whereby its damages could be reasonably calculated. Thus, as a matter of law, the amount of damages provided by the subject agreement — $10,000 — was commercially unreasonable, and substantively unconscionable.
 {¶ 22} Further, in this case, there are numerous indicia of procedural unconscionability. Education is an factor in determining procedural unconscionability. Eagle at ¶ 59;Collins at 834. In the instant case, Bodor was an attorney; appellant had an eighth grade education. Experience is a factor.Eagle at ¶ 31; Collins at 834. Bodor specialized in realty law; appellant admittedly had great experience drafting contracts concerning timber rights, but otherwise evinced fear and unfamiliarity with the legal system. In this regard, it must be recalled that there is evidence in the record that Bodor warned appellant that the trespass on the Renken land was a "penitentiary" offense. This particular piece of evidence also reflects on another factor significant to procedural unconscionability — whether one party was misled. Taylor at 4. Criminal trespass carries a maximum sentence of thirty days in jail — hardly what most people think of as a "penitentiary" matter. And, while both parties agree that attempts were made to contact appellant's attorney prior to the agreement being made, it remains a fact that appellant was unrepresented, and that Renken was represented by an experienced realty attorney. Once again, this indicates procedural unconscionability in the formation of the contract. Porpora at ¶ 7.
 {¶ 23} Procedural unconscionability concerns the validity of a contract's formation, and the ultimate question in identifying whether procedural unconscionability exists is whether there was a meeting of the minds of the parties. Cf. Porpora at ¶ 7. In the instant case, we note that appellant believed that the check he submitted for $10,800 was for criminal trespass, punitive damages, a license, and Bodor's attorney fees. Renken alleged — and the trial court found — that the check was for a settlement of trespass damages, and a license fee. This is evidence of yet another factor of procedural unconscionability, i.e., failure to explain the contract. It also indicates that there was no meeting of the minds between the parties herein.
 {¶ 24} In determining unconscionability, courts are required to look at all of the facts and circumstances surrounding the contract in question. Porpora at ¶ 9; Lightning Rod Mut. Ins.Co. v. Saffle (Nov. 6, 1991), 9th Dist. No. 15134, 1991 Ohio App. LEXIS 5394, at 10. When all of the aforementioned factors indicating procedural unconscionability in the formation of this contract are considered together, it is evident that appellant has met his burden in proving the second prong of the unconscionability test.
 {¶ 25} Appellant's first assignment of error has merit. In view of our decision regarding appellant's first assignment of error, appellant's second assignment of error is rendered moot.
 {¶ 26} The judgment of the trial court is reversed and the matter is remanded for further proceedings consistent with this opinion.
WILLIAM M. O'NEILL, J., concurs, DONALD R. FORD, P.J., dissents with Dissenting Opinion.