OPINION
{¶ 1} This appeal originates from a September 28, 2005 judgment of the Portage County Court of Common Pleas, denying the motion for summary judgment of appellant, Dalejo Farm, Inc., and granting the motion for summary judgment of appellee, Approved Statewide Title Agency Corp.
 {¶ 2} On January 23, 2004, appellant filed a complaint against appellee for breach of contract, breach of fiduciary duty, and breach of duty of care, alleging that appellee failed to follow escrow instructions to file appellant's mortgage as a first mortgage.
 {¶ 3} After discovery was completed in March 2005, appellant and appellee filed cross motions for summary judgment. On August 26, 2005, the magistrate issued her decision, granting appellee's summary judgment motion and denying appellant's. The trial court adopted the magistrate's decision, ordering the same, on September 28, 2005.
 {¶ 4} The facts emanating from the record are as follows: on or about March 2, 2000, appellant, through its agent, Dale Pierce ("Pierce"), and Robert J. Andrews, Jr. ("Andrews"), entered into a "Real Estate Purchase Agreement" ("Agreement"), where Andrews agreed to purchase from appellant seventy-five acres of vacant real property located on Chamberlain Road in the Township of Mantua, Portage County, Ohio, in order to develop a residential subdivision. The agreed purchase price for the property was $750,000.
 {¶ 5} According to the terms of the Agreement, Andrews was to pay appellant $1,000 in earnest money upon execution, $249,000 at closing, and the balance, $500,000, was to be secured by a promissory note ("Note"), executed by Andrews and delivered to appellant at closing. The Agreement further provided that the Note shall provide for the two payments of $250,000, plus interest at the rate of eight percent per annum, on the first and second anniversary dates of the closing.
 {¶ 6} The following additional requirements were set forth in the Agreement:
 {¶ 7} "* * * The Note shall be secured by a purchase money first mortgage ('the Mortgage') encumbering the property, which Seller agrees to subordinate to Buyer's development loan. * * * Buyer agrees that the development loan to Buyer shall not exceed $500,000.00, and that said funds shall be used solely to fund the subdivision improvements.
 {¶ 8} Also included in the Agreement in a later section labeled "Development of the Property," was the following provision: "[b]uyer shall use the property for the purpose of developing the same into a single family residential subdivision and for no other purpose. * * *"
 {¶ 9} The Agreement further appointed appellee as the "Escrow Agent," and indicated, in the "Escrow Conditions" that "[t]his [a]greement shall serve as escrow instructions * * *."
 {¶ 10} On April 19, 2000, Andrews executed the Note in favor of appellant. At or about the same time, Andrews obtained a development loan from First Merit Bank ("First Merit") for $500,000, which was secured by a mortgage on the property.
 {¶ 11} On April 21, 2000, appellant, through Pierce, accepted the proposed settlement statement presented by appellee. The settlement statement indicates that the gross amount due to appellant was $750,000 (contract sales price), listing $500,000 as a "2nd
Mortgage," and cash due at settlement to appellant as $220,587.03.[1]
 {¶ 12} Appellee was the escrow agent for both First Merit's transaction with Andrews, as well as appellant's. In April 2000, appellee filed First Merit's mortgage (the development loan) prior to that of appellant's mortgage to Andrews.
 {¶ 13} Andrews never used the funds from First Merit to develop the property. After making his second payment in the spring of 2001 to appellant, Andrews defaulted on his loan payments, leaving a balance over $250,000.
 {¶ 14} In addition, Andrews breached his obligation to First Merit. On January 30, 2002, First Merit filed suit against Andrews. Appellant was named as a defendant in the suit because of its mortgage interest in the property. On October 1, 2003, the trial court concluded that First Merit was entitled to judgment as a matter of law, finding that First Merit's mortgage on the property was a valid first mortgage.[2] The trial court ordered that the sum of $524,485.62 plus interest at the rate of 10.25 percent from November 29, 2001, was due to First Merit. The trial court further ordered that if the amount was not paid within three days of the entry, the premises shall be foreclosed and sold at a sheriff's sale. In December of 2004, the property was sold at sheriff's sale for $679,000.
 {¶ 15} It is from the September 28, 2005 judgment that appellant filed a timely notice of appeal, raising the following assignments of error:
 {¶ 16} "[1.] The trial court committed reversible error when it denied appellant's motion for summary judgment despite appellee's clear breach of the escrow instructions.
 {¶ 17} "[2.] The trial court committed reversible error when it granted appellee's motion for summary judgment when reasonable minds cannot conclude that appellee's entitled to judgment as a matter of law."
 {¶ 18} Because appellant's assignments are interrelated, we will address them in a consolidated manner.
 {¶ 19} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v.Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 20} The Ohio Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion,and identifying those portions of the record which demonstrate theabsence of a genuine issue of fact on a material element of thenonmoving party's claim. The 'portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 21} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. LeadworksCorp. (1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 22} Appellant argues that appellee, as the escrow agent, was required to strictly follow the terms of the Agreement. Appellant contends that the terms of the Agreement make it clear that appellee was to file appellant's mortgage first, and First Merit's mortgage (the development loan) second.[3] Appellant concedes that it agreed to subordinate its mortgage to the development loan. However, appellant maintains that the terms of the Agreement are plain and unambiguous, and provide that appellant agreed to subordinate its mortgage only after Andrews actually used the $500,000 borrowed to develop the subdivision.
 {¶ 23} On the other hand, appellee insists that it properly followed the escrow instructions when it filed Andrew's development loan with First Merit first and Andrew's loan from appellant second. Appellee points to language employed by Andrews and appellant in the Agreement, which it claims indicates that appellant agreed to subordinate its mortgage to the development mortgage.
 {¶ 24} As is evident, the crux of this appeal lies in deciphering the parties' intent in the Agreement; i.e., we must determine whether the terms mandate that appellee should have filed appellant's mortgage prior to that of First Merit's.
 {¶ 25} "[T]he construction of a written contract is a question of law, which we review de novo." In re all Kelley Ferraro AsbestosCases, 104 Ohio St.3d 605, 2004-Ohio-7104, at ¶ 28, citingContinental W. Condominium Unit Owners Assn. v. Howard E. Ferguson,Inc. (1996), 74 Ohio St.3d 501, 502; Nationwide Mut. Fire Ins. Co. v.Guman Bros. Farm (1995), 73 Ohio St.3d 107, 108; Alexander v. BuckeyePipe Line Co. (1978), 53 Ohio St.2d 241, paragraph one of the syllabus.
 {¶ 26} In Kelley, at ¶ 29, the Supreme Court further stated:
 {¶ 27} "[i]n construing the terms of a written contract, the primary objective is to give effect to the intent of the parties, which we presume rests in the language that they have chosen to employ.Saunders v. Mortensen, 101 Ohio St.3d 86, 2004-Ohio-24, at ¶ 9 * * *, citing Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130 * * *, paragraph one of the syllabus. 'Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.'Alexander, [supra] * * *, at paragraph two of the syllabus. Where the terms are clear and unambiguous, a court need not go beyond the plain language of the agreement to determine the rights and obligations of the parties. Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53 * * *. Where possible, a court must construe the agreement to give effect to every provision in the agreement. Foster WheelerEnviresponse, Inc. v. Franklin Cty. Convention Facilities Auth. (1997),78 Ohio St.3d 353, 362 * * *, quoting Farmers Natl. Bank v. Delaware Ins.Co. (1911), 83 Ohio St. 309 * * *, paragraph six of the syllabus." (Parallel citations omitted.)
 {¶ 28} We agree with appellee that the term "subordinate" has a plain and ordinary meaning. In B B Heating Air Conditioning Co., Inc.
(Nov. 20, 1992), 11th Dist. No. 92-L-031, 1992 Ohio App. LEXIS 5878, at 8, we cited to Black's Law Dictionary, (5 Ed. 1979) 743, to define "subordinate" as: "'[p]laced in lower order, class or rank; occupying a lower position in a regular descending series; inferior in order, nature, dignity, power, importance or the like; belonging to an inferior in classification, and having a lower position in a recognized scale; secondary, minor.'" We further stated, "[t]here is no other definition or explanation of the term 'subordinate' or 'subordination' in the contract documents. Hence, the law clearly states that those terms must be accorded their ordinary, plain, customary meaning and construction[.]" Id. We have an analogous situation in the case at bar. The Agreement did not define subordinate, and as such, we must give it its plain and customary meaning as defined here.
 {¶ 29} However, there does appear to be some ambiguity in the terms employed in the Agreement. The pertinent provision reads: "[t]he Note shall be secured by a purchase money first mortgage * * * encumbering the property, which Seller agrees to subordinate to Buyer's development loan." (Emphasis added.) The first half of the sentence indicates that the Note shall be a first mortgage. The second half of the sentence explicitly states that appellant agrees to subordinate the Note to Andrew's development loan. According to our definition of subordinate, that means appellant's loan would be second to that of First Merit's mortgage.
 {¶ 30} It is this second half of the sentence which appellee relies on for its argument that the language of the Agreement, which also served as the escrow instructions, made it evident that appellant agreed to subordinate its mortgage to First Merit's mortgage to Andrews. However, as we previously indicated, the Agreement also states that the Note would be secured by a purchase money first mortgage. Thus, the language employed is not clear and unambiguous. As such, we must look to the overall content of the Agreement, as well as extrinsic evidence, in order to ascertain the parties' intent. Westfield Ins. Co. v.Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, at ¶ 12, citing Shifrin v.Forest City Enterprises, Inc. (1992), 64 Ohio St.3d 635.
 {¶ 31} Appellant argues that the sentence, "'Buyer agrees that the development loan to Buyer shall not exceed $500,000.00, and that said funds shall be used solely to fund the subdivision improvements[,]'" elucidates the apparent ambiguity. He contends that this provision makes it undeniably clear that the Note was to be a first mortgage, and should have been moved to the second position "only if Andrews obtained and implemented a construction loan." (Emphasis sic.) Appellant argues that, "[t]he actual implementation, rather than just the procurement, of a construction loan was vital to Appellant's agreement to subordinate its mortgage interest[.]"
 {¶ 32} Appellee agrees that as an escrow agent, it had to adhere to the terms of the escrow agreement, but maintains that it did just that. Appellee argues that, per appellant's interpretation of the Agreement, appellee would "have had to indefinitely monitor the manner in which * * * Andrews spent the construction loan from First Merit." Appellee insists that "[s]uch an interpretation of the [Agreement], whereby an escrow agent is charged with ensuring ongoing performance by the parties, is not reasonable and should be summarily rejected by this [c]ourt." Unless an escrow agent expressly agreed to do so, we wholeheartedly agree. If we were to accept appellant's interpretation of the Agreement, then "manifest absurdity" would result. Alexander, supra, at paragraph two of the syllabus. We decline to do so.
 {¶ 33} We also agree with appellee that the only reasonable construction of the Agreement is that First Merit's mortgage would be senior to that of appellant's. Appellant argues that the provision, "'Buyer agrees that the development loan to Buyer shall not exceed $500,000.00 and that said funds shall be used solely to fund the subdivision improvements[,]'" also evidences that his intent to subordinate was conditional. However, we agree with appellee that this matter; whether Andrews misused funds received from First Merit, is between Andrews and appellant, not appellee, the neutral escrow agent.
 {¶ 34} We further agree with appellee that it did not have a duty to supervise Andrews' use of the First Merit funds. Appellee was not a party to the original Agreement between appellant and Andrews. It was merely the agent hired by Andrews and appellant to carry out the instructions when filing the title. In Hurst v. Enterprise Title Agency,Inc., 157 Ohio App.3d 133, 2004-Ohio-2307, at ¶ 35, we explained that "escrow services [are] collateral to the real estate transaction." Specifically, "[a]n escrow agent 'is an agent of both parties,'" owing them "a duty 'to carry out the terms of the agreement as [they] intended[.]'" Id. at ¶ 40. It is clear that appellee's escrow obligations did not include monitoring Andrew's use of the First Merit funds to ensure that he spent it on the residential development.
 {¶ 35} Moreover, Pierce ultimately agreed in his deposition that the actual language used in the Agreement regarding subordination did not indicate that it was conditioned upon Andrews' use of the developmental loan money. He also admitted that on the day he signed the settlement statement finalizing the transaction, he noticed that appellant's mortgage was listed as a second mortgage. However, he executed the document, took his settlement check for $220,587.03 and subsequently cashed it, rather than refusing to sign it until he was satisfied or putting the deal on hold until he talked to his attorney. He did none of these things.
 {¶ 36} In his deposition, Pierce claimed that although he noticed appellant's mortgage was listed as a second mortgage in the settlement statement, he believed the Agreement took precedence over it. Pierce further stated that he did question appellee's agent as to why appellant's mortgage was listed as second, but that he could not remember what she said. He further indicated that he did contact his attorney after he signed the settlement statement because he was confused as to why his mortgage was listed second, but that he never reached him. However, he admitted that he never contacted appellee about the matter, at least not until he filed his lawsuit in January 2004, four years after the transaction had been completed and appellee's duty to appellant had ended.
 {¶ 37} Thus, it is clear from the record that appellee did not breach its contract with, or fiduciary duty to, appellant. It followed the only reasonable interpretation of the escrow instructions. According to the fax cover sheets and not contradicted by appellant, appellee sent all of the mortgage documents to Attorney Aveni prior to filing anything, and prior to appellant's agent, Pierce, signing any of the closing documents. This, along with all of the other evidence, shows that Pierce, as appellant's agent, was fully aware, prior to finalizing the transaction, that appellant's mortgage was to be filed as a second mortgage to First Merit's mortgage. If that was not his intent pursuant to the Agreement, he should have acted accordingly. Therefore, we conclude that no genuine issue of material fact remains and the trial court did not err in granting summary judgment to appellee.
 {¶ 38} As such, appellant's assignments of error lack merit. The judgment of the Portage County Court of Common Pleas is affirmed.
[1] Two fax cover sheets are included in the record that were sent to appellant's attorney, James Aveni ("Attorney Aveni") prior to appellant finalizing the transaction. One fax cover sheet, sent on April 7, 2000, indicates that a fax was sent to Attorney Aveni from Louis Dudek ("Dudek"), part owner of and senior vice president for appellee, stating that: "Enclosed please find [a] copy of [the] title commitment. Mr. Andrews will forward for your review the second mortgage." The second fax cover sheet was sent on April 19, 2000, by Kelly Kunkle ("Kunkle") to Attorney Aveni, stating that: "Re: Dalejo Farms to Andrews[,] Mtg note[,] mtg deed[,] [and] closing statement[.]"
[2] Appellant appealed the trial court's decision to this court. InFirst Merit Bank, N.A. v. Andrews, Dalejo Farm, Inc., 2003-P-0121,2004-Ohio-5104, we upheld the trial court's granting summary judgment to First Merit based upon several reasons: appellant was not entitled to equitable subrogation/subordination (Id. at ¶ 21; appellant's mortgage was filed two minutes after First Merit's, thus, the trial court did not err in concluding that First Merit's mortgage was filed first (Id. at ¶ 25); there was no evidence to support appellant's arguments that First Merit negligently disbursed the money loaned to Andrews (Id. at ¶ 26-27); and finally, that a senior lienholder has no duty to protect the interests of a subordinate lien holder (Id. at ¶ 29).
[3] R.C. 5301.23(A) provides that: "[a]ll properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record. If two or more mortgages pertaining to the same premises are presented for record on the same day, they shall take effect in the order of their presentation. The first mortgage presented shall be the first recorded, and the first mortgage recorded shall have preference."