Shay, Appellee, v. Shay et al.; Ohio Mutual
Insurance Group, Appellant.

[Cite as *Shay v. Shay,* 113 Ohio St.3d 172, 2007-Ohio-1384.]

(No. 2005-2277—Submitted November 29, 2006—Decided April 11, 2007.)

O'Connor, J.

{¶ 1} In this matter, we address whether the General Assembly's response to our decision in *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, which was contained in Sub.S.B. No. 267, 148 Ohio Laws, Part V, 11380, 11384–11385, effective Sept. 21, 2000 ("S.B. 267"), requires an insurer to amend the coverage in a policy at a six-month renewal point within a two-year statutorily guaranteed period, if that two-year period commenced before S.B. 267 took effect.[1]  We hold that although an insurer and its insured may agree to amend the terms of a policy at the time of the six-month renewal, and thereby increase the scope of uninsured- and underinsured-motorist ("UM/UIM") coverage in accordance with S.B. 267, the insurer was not required to do so until a two-year statutorily guaranteed period commenced after the effective date of S.B. 267.

## Relevant Background

{¶ 2} Appellee, Debra Shay, was injured seriously in a single-vehicle accident on March 16, 2001.  At the time of the accident, Shay was a passenger in a minivan operated by her husband.

{¶ 3} Appellant, Ohio Mutual Insurance Group ("Ohio Mutual"), insured the vehicle through a personal auto policy.  Shay and her husband were the named insureds on the policy, which was first issued to them on July 6, 1998.  The Shays' first two-year guarantee period thus ran from July 6, 1998, to July 6, 2000. At the conclusion of that period, they entered a second two-year guarantee period, which ran from July 6, 2000, to July 6, 2002.

---

1. R.C. 3937.31(A) provides that every automobile insurance policy in Ohio shall be issued for a period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years.

{¶ 4} The policy provided liability coverage as well as UM/UIM coverage. Two exclusions in the policy are relevant here: an exclusion from liability coverage for injuries sustained by a family member who resides in the insured driver's household, and a "household exclusion," which excludes from the definition of an uninsured motor vehicle any vehicle owned by a named insured or a family member residing in the insured's household. The latter exclusion mirrored the version of R.C. 3937.18(K)(2) in effect at the time the policy was issued and at the onset of the second two-year guarantee period.[2]

{¶ 5} In September 2000, however, S.B. 267 changed the UM/UIM terrain. It removed the provision in R.C. 3937.18(K)(2) allowing insurers to bar a vehicle owned by a named insured from the definition of an uninsured vehicle.

{¶ 6} Shay relied extensively on S.B. 267 in seeking UM/UIM coverage pursuant to the Ohio Mutual policy. She argued that because the policy excluded liability coverage for injuries sustained by a household member (her) of an insured driver (her husband), the liability exclusion effectively rendered her husband an uninsured motorist for purposes of her claims. She further argued that the policy's UM/UIM household exclusion was eviscerated by S.B. 267, and that S.B. 267 was incorporated into the policy on January 6, 2001, the date the Shays first renewed the policy after S.B. 267 became effective. She conceded that UM/UIM coverage would not have been available to her absent S.B. 267, but concluded that in S.B. 267's wake, she was entitled to the UM/UIM benefits in the policy.

{¶ 7} Ohio Mutual denied her claim. Citing *Wolfe*, which held that every automobile liability insurance policy issued in Ohio has a guaranteed two-year period during which the policy cannot be altered without the parties' agreement, Ohio Mutual asserted that the original terms of its policy, including the UM/UIM exclusion, remained extant through the period from July 2000 until July 2002. Ohio Mutual argued that the Shays' policy could be modified by the passage of S.B. 267 only at the conclusion of the guarantee period in 2002, not at the interim renewals within that two-year period. Because the guarantee period did not expire until after the accident, Ohio Mutual maintained that the UM/UIM household exclusion remained in force and precluded coverage for Shay's injuries.

{¶ 8} On cross-motions for summary judgment in the ensuing declaratory-judgment action, the trial court found in favor of Shay. Its cryptic judgment entry simply noted that Shay "asserts the policy language and recent Court decisions

---

2. According to the statute in effect in July 1998, uninsured and underinsured motor vehicles did not include vehicles "owned by, furnished to, or available for the regular use of a named insured, a spouse, or a resident relative of a named insured." Am.Sub.H.B. No. 261, 147 Ohio Laws, Part II, 2372, 2376, eff. Sept. 3, 1997. That portion of the statute remained unaltered on July 6, 2000, the date on which the second two-year guarantee period began.

make [her] an 'insured.' The Court concurs in [Shay's] argument, and it denies [Ohio Mutual's] Motion."

{¶ 9} The court of appeals affirmed in a more thorough decision. Its opinion properly acknowledged that our decision in *Wolfe* applied, correctly described its holding, and noted the appellate courts' application of the *Wolfe* rule of law in subsequent cases:

{¶ 10} "In [*Wolfe*], the Ohio Supreme Court considered the effect of R.C. 3937.31(A) * * * [on] an automobile policy [that] was issued in 1983. The insured was injured on April 2, 1995, and sought UM coverage under her policy. The insured sought to have *Savoie v. Grange Mut. Ins. Co.* (1993), 67 Ohio St.3d 500, 620 N.E.2d 809, be applied to the terms of her policy, which would have afforded her UM coverage. The insurer, however, sought to have Am.Sub.S.B. No. 20, 145 Ohio Laws, Part 1, 204 ('S.B. 20'), effective October 20, 1994, apply to the policy, which would have precluded the insured from receiving UM coverage. The court in *Wolfe* had to determine whether the law of *Savoie* or the provisions of S.B. 20 applied to the policy at issue.

{¶ 11} "Because the policy in *Wolfe* had been renewed on December 12, 1994, after the effective date of S.B. 20, the insurer argued that the provisions of S.B. 20 were incorporated into the policy at that time. The court, however, held, 'Pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39.' *Wolfe* at paragraph one of the syllabus. The court further held that the guarantee period mandated by R.C. 3937.31(A) is not limited solely to the first two years following the initial institution of coverage, and that the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of insurance. Id. at paragraphs two and three of the syllabus.

{¶ 12} "By counting successive two-year policy periods from the inception of the policy, the court in *Wolfe* determined that the last guaranteed policy period prior to the accident would have begun on December 12, 1993. Therefore, even though S.B. 20 became effective on October 20, 1994, and the policy was renewed on December 12, 1994, the terms of the policy could not have been amended by the insurer to lessen the insured's coverage until the expiration of the two-year guarantee period, i.e., December 12, 1995. Because *Savoie*, 67 Ohio St.3d 500, 620 N.E.2d 809, was the law in effect at the time of the December 12, 1993 renewal, the court held that the insured was entitled to UM coverage pursuant to *Savoie*. *Wolfe*, 88 Ohio St.3d at 250, 725 N.E.2d 261, citing *Ross v. Farmers Ins. Group of Cos.* (1998), 82 Ohio St.3d 281, 695 N.E.2d 732 ('The statutory law in effect on the date of issue of each new policy is the law to be applied').

{¶ 13} "Relying in part on *Wolfe*, other courts have held that a policy cannot be amended to reflect the changes made by S.B. 267 until the expiration of the two-year guarantee period. See, e.g., *Young v. Cincinnati Ins. Co.*, 8th Dist. No. 82395, 2004-Ohio-54, 2004 WL 35770; and *Slone v. Allstate Ins. Co.*, 5th Dist. No. 2004CA0021, 2004-Ohio-3990, 2004 WL 1699899.

{¶ 14} "In *Young* and *Slone*, the insurance companies sought to incorporate S.B. 267 into their policies upon a renewal date that occurred after the effective date of S.B. 267, but during the two-year guarantee period provided by R.C. 3937.31(A). In each case, application of S.B. 267 would have precluded the insured from receiving UM coverage, whereas without the application of S.B. 267, the insured would have received UM coverage. The courts held that the terms of coverage, which would have allowed the insured to receive UM coverage, were guaranteed for two-year periods of time pursuant to R.C. 3937.31(A). Therefore, in each case, the insurance company was prohibited from applying S.B. 267 retroactively to its policy in order to bar the insured's right to receive UM coverage." *Shay v. Shay*, 164 Ohio App.3d 518, 2005-Ohio-5874, 843 N.E.2d 194, ¶ 13–17.

{¶ 15} Although the court of appeals correctly characterized *Wolfe* and its progeny, it nevertheless departed from them. It concluded that the Ohio Mutual policy was amended to incorporate the provisions of S.B. 267 at the point of renewal on January 6, 2001, rather than at the beginning of the next two-year guarantee period. In so doing, the appellate court attempted to distinguish the instant case from previous cases:

{¶ 16} "In *Wolfe, Young*, and *Slone*, the insurance company sought to lessen an insured's UM coverage by amending its policy at a time when it was statutorily prohibited from doing so, i.e., during the two-year guarantee period set forth in R.C. 3937.31(A). Obviously, an insurance company is barred from amending its policy language during the two-year guarantee period in a way that would *lessen* an insured's coverage, unless agreed to by the insured. See R.C. 3937.31(A) ('Where renewal is mandatory, "cancellation" * * * includes refusal to renew a policy *with at least the coverages*, included insureds, and policy limits provided at the end of the next preceding policy period.' [Emphasis added.] ).

{¶ 17} "We find, however, that an insurance company is not prevented from *increasing* the coverage it provides during any two-year period. To the contrary, an insurer has always been allowed to modify a policy so long as it does not 'effect a withdrawal or reduction in the initial coverage or policy limits.' R.C. 3937.31(B)(3). Similarly, *Wolfe* held that a policy is permitted to be altered 'by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39' within the two-year guarantee period. Accordingly, we find that R.C. 3937.31(A) provides a floor for what coverage must be provided, not a ceiling." (Emphasis

sic.) *Shay v. Shay,* 164 Ohio App.3d 518, 2005-Ohio-5874, 843 N.E.2d 194, ¶ 20–21.

{¶ 18} Having so concluded, the appeals court found that although the household exclusion would have denied coverage to Shay, it was unenforceable because it was no longer permitted by statute and conflicted with the purposes of R.C 3937.18. Id., ¶ 24.

{¶ 19} The court of appeals also stated that it was not applying S.B. 267 retroactively. That determination was based on the court's belief that the policy's "conformity clause," which provides that policy terms in conflict with state law are to be amended to conform to state law, applied at the time of renewal to amend the policy terms to conform with S.B. 267 and eliminate the household exclusion. Id. at ¶ 23. According to the appellate court, because Ohio Mutual agreed to conform its policies to comport with Ohio law and Ohio law forbade the household exclusion at the time of renewal, the incorporation of the provisions of S.B. 267 into the policy did not violate any statute or interfere with any vested rights and thus was not an impermissible retroactive application. Id. at ¶ 25.

{¶ 20} After reaching these conclusions, the court sua sponte found that its decision was in conflict with *Flowers v. Ohio Mut. Ins. Group,* 3d Dist. No. 13–02–28, 2003-Ohio-441, 2003 WL 202237. On review, this court determined that a conflict did exist and ordered briefing on the following issues:

{¶ 21} "Does the Ohio Supreme Court's decision in *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246 [725 N.E.2d 261], and R.C. 3937.31(A), prevent an insurance company from amending the terms of its policy language, at the time of renewal, to increase the amount of [UM/UIM] coverage it provides, prior to the expiration of the two-year guarantee period discussed in R.C. 3937.31(A)?

{¶ 22} "Is it an unlawful retroactive application to allow Am.Sub.S.B. No. 267 to apply to the terms of a renewal policy, prior to the expiration of the two-year guarantee period discussed in R.C. 3937.31(A), to increase [UM/UIM] coverage?" *Shay v. Shay,* 108 Ohio St.3d 1506, 2006-Ohio-1329, 844 N.E.2d 853.

### ANALYSIS

{¶ 23} In *Wolfe,* we acknowledged the General Assembly's laudatory objectives in ensuring that all motorists maintain some form of liability coverage on their motor vehicles, and we held that "pursuant to R.C. 3937.31(A), every automobile liability insurance policy issued in this state must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39." 88 Ohio St.3d 246, 250, 725 N.E.2d 261. We further held that the commencement of each policy period brought a new contract of insurance into

existence, whether the policy was categorized as a new policy or a renewal of an existing policy. Id. In light of that construction of R.C. 3937.31(A), we held that enactments by the General Assembly that became effective after the commencement of a two-year policy period could not be incorporated into the insurance contract until after that two-year period had expired and a new one had begun. Id. at 250–251.

{¶ 24} *Wolfe* adhered to our prior holdings that the statutory law to be applied when interpreting a policy for motor-vehicle insurance is the statute in effect when the policy was issued. Id. at 250, 725 N.E.2d 261. We rejected the insurer's argument that our decision in *Benson v. Rosler* (1985), 19 Ohio St.3d 41, 44, 19 OBR 35, 482 N.E.2d 599, compelled a different result. *Wolfe,* 88 Ohio St.3d at 251, 725 N.E.2d 261. In *Benson,* we held that statutes pertaining to an insurance policy and its coverage that are enacted after the policy's issuance are incorporated into a renewal of the policy if the renewal represents a new contract of insurance separate from the initial policy. Indeed, we stated expressly, "We now believe that in *Benson* the majority misconstrued R.C. 3937.31(A)" and that the determination that the policies were to be considered new at each six-month renewal point was "confusing at best and flat-out wrong at its worst." *Wolfe* at 251.

{¶ 25} *Wolfe,* and the limitation it imposed on *Benson,* drew a strong dissenting opinion and a response from the legislature. Within six months of our decision, the General Assembly used S.B. 267 to amend R.C. 3937.31 by adding subsection E, which provides: "Nothing in this section prohibits an insurer from incorporating into a policy any changes that are permitted or required by this section or other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of this section." S.B. No. 267, 148 Ohio Laws, Part V, 11385. In amending the statute, the General Assembly enunciated its purpose: "It is the intent of the General Assembly in amending section 3937.31 of the Revised Code to make it clear that an insurer *may* modify the terms and conditions of any automobile insurance policy to incorporate changes that are permitted or required by that section and other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of that section." (Emphasis added.) Id. at 11386.

{¶ 26} In light of that legislative action, three members of this court, Justices Lundberg Stratton, O'Connor, and Lanzinger dissented from a decision to dismiss an appeal of *Young v. Cincinnati Ins. Co.,* 8th Dist. No. 82395, 2004-Ohio-54, 2004 WL 35770, as having been improvidently accepted. The dissenters opined that S.B. 267 superseded the interpretation of R.C. 3937.31 found in *Wolfe* and that, as a result of S.B. 267, a policy that is renewed every six months could be modified at the time of renewal rather than only at the beginning of a two-year guarantee period, as required by *Wolfe. Young v. Cincinnati Ins. Co.,* 105

Ohio St.3d 1252, 2005-Ohio-1941, 826 N.E.2d 309, ¶ 8. See, also, *Slone v. Allstate Ins. Co.*, 105 Ohio St.3d 1254, 2005-Ohio-1940, 826 N.E.2d 310. The dissenters' analysis did not prevail, however, and the dissent in *Young* remained just that, "[a] disagreement with a majority opinion," Black's Law Dictionary (8th Ed.2004) 506, without force of law or precedential value.

{¶ 27} Despite the dissent in *Young* questioning the viability of *Wolfe* in the wake of S.B. 267, there is no showing that the analysis set forth in *Wolfe* fails our tripartite test for overruling precedent. See *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, paragraph one of the syllabus. Thus, the dissent in *Young*—which is, essentially, the appellee's argument here— must cede to the precedent of *Wolfe*. That deference to an established majority opinion, despite a jurist's disagreement with the opinion, is part of the court's rich tradition of adherence to stare decisis. See, e.g., *Taylor v. Natl. Group of Cos., Inc.* (1992), 65 Ohio St.3d 482, 483, 605 N.E.2d 45 (Holmes, J., concurring) ("Although I dissented in *Elek v. Huntington Natl. Bank* [ (1991), 60 Ohio St.3d 135, 573 N.E.2d 1056], and still personally adhere to the view espoused in such dissent, the policy of stare decisis prevails, and I must concur with the majority on that basis"); *Ewers v. Coldren* (1949), 151 Ohio St. 193, 195, 85 N.E.2d 107 ("While the writer of the present opinion wrote the dissent in [*Squire v. Guardian Trust Co.* (1946), 147 Ohio St. 1, 33 O.O. 179, 68 N.E.2d 312], and while Judge Matthias and Judge Hart, who concurred in such dissenting opinion, and the writer are still of the opinion expressed in such dissent, yet we believe that generally in procedural questions the doctrine of stare decisis should be recognized").

{¶ 28} As we stated in *Galatis*, whenever possible we must maintain and reconcile our prior decisions to foster predictability and continuity, prevent the arbitrary administration of justice, and provide clarity to the citizenry. *Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 43. That understanding is perhaps particularly true in cases driven by statutory interpretation and any legislative response to that interpretation. See *Square D Co. v. Niagara Frontier Tariff Bur., Inc.* (1986), 476 U.S. 409, 424, 106 S.Ct. 1922, 90 L.Ed.2d 413, quoting *Burnet v. Coronado Oil & Gas Co.* (1932), 285 U.S. 393, 406, 52 S.Ct. 443, 76 L.Ed. 815 (Brandeis, J., dissenting) ("As Justice Brandeis himself observed * * * in commenting on the presumption of stability in statutory interpretation: 'Stare decisis is usually the wise policy because in most matters, it is more important that the applicable rule of law be settled than that it be settled right. * * * This is commonly true, even where the error is a matter of serious concern, provided correction can be had by legislation' ").

{¶ 29} Here, there is no showing that the legislative response to our decision in *Wolfe*, which is found in S.B. 267, required an insurer to incorporate its provisions

at the six-month renewal point. Given that S.B. 267 followed *Wolfe*, we presume that the General Assembly would have used language that mandated the incorporation of its terms into a policy at the six-month point of renewal rather than at the beginning of a new two-year guarantee period. The General Assembly did not do so. It simply stated that nothing in the law prohibited an insurer from doing so. If it wishes to say more, it has that prerogative.

{¶ 30} Although we, like the appellate court, are aware of the intent of the statutes at issue here and the important public policies that underlie them, a court can not elevate its interpretation of those policies over the plain wording of the statute and established precedent.

{¶ 31} We thus hold that absent an agreement between the insurer and the insured to amend the policy terms at the six-month renewal point, R.C. 3937.31(A) and our decision in *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, prevent an insurance company from amending the terms of its policy to increase the amount of coverage it provides, at the six-month point of renewal. In light of this disposition of the first certified question, the second certified question is moot.

Judgment reversed.

MOYER, C.J., LUNDBERG STRATTON, O'DONNELL and LANZINGER, JJ., concur.

DONOVAN, J., dissents.

PFEIFER, J., dissents and would answer the certified questions in the negative, following the reasoning of the court of appeals.

MARY E. DONOVAN, J., of the Second Appellate District, was assigned to sit for RESNICK, J., whose term ended on January 1, 2007.

CUPP, J., whose term began on January 2, 2007, did not participate in the consideration or decision of this case.

———

E.J. Leizerman & Associates, L.L.C., Ronald F. Leonhardt, and Michael J. Leizerman, for appellee.

Manahan, Pietrykowski, DeLaney & Wasielewski, Glenn E. Wasielewski, and Stephen E. House, for appellant.

Paul W. Flowers Co., L.P.A., and Paul Flowers; and A. Mark Segreti Jr., urging affirmance for amicus curiae, Ohio Academy of Trial Lawyers.