JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiffs-appellants, Mary Kudla, Jean M. Kudla, Sharon Kudla Brady, and Mari Kudla Donnelly, appeal from common pleas court orders granting summary judgment in favor of defendants-appellees, State Farm Insurance Companies and Allstate Insurance Company, on appellants' claims for underinsured motorist ("UIM") coverage. We affirm.
 Procedural History {¶ 2} The complaint in this case was filed June 22, 2005, having been previously filed and dismissed. The 15 named plaintiffs included the wife, children, and grandchildren of decedent Thomas Kudla. Except for the claims of plaintiffs-appellants, all other claims were dismissed with prejudice during the course of this action.
 {¶ 3} The complaint alleged that on June 27, 2002, Jean Kudla was operating a vehicle in which her father, Thomas Kudla, was a passenger when they were struck by another vehicle operated by Margaret Wendt. Thomas Kudla died as a result of injuries he sustained in this collision. Plaintiffs sought to recover against Wendt for the wrongful death of Thomas Kudla and for bodily injuries to Jean Kudla. Plaintiff Mari Kudla Donnelly (the decedent's granddaughter) made a claim against her own automobile liability insurer, Allstate, pursuant to the UIM provisions of her policy for her loss of consortium with her grandfather. The remaining plaintiffs made claims for the same kinds of losses under the UIM coverage provided by various *Page 4 
policies issued by State Farm. All defendants answered; State Farm and Allstate counterclaimed for a declaratory judgment regarding the coverage provided by their policies.[1]
 {¶ 4} Plaintiffs sought summary judgment regarding State Farm's and Allstate's contractual liability. Allstate and State Farm likewise sought summary judgment regarding their obligations under the UIM provisions of their policies. The court denied plaintiffs' motion and granted Allstate's, without opinion. Thereafter, the court granted State Farm's motion. Plaintiffs' attempted appeal from these judgments was dismissed for lack of a final appealable order because the trial court did not declare the parties' rights and obligations under the various insurance policies. The trial court then issued a judgment which determined that "no uninsured/underinsured motorist coverage is available to Plaintiffs based upon the undisputed facts. More specifically, this Court concludes inter alia that the remaining State Farm policies are subject to 2000 S.B. 267 (eff. September 21, 2000), which permits coverage for Sexton/Moore to be excluded by the insuring agreement. Hedges v. Nationwide Mut. Ins. Co., 109 Ohio St.3d 70,2006-Ohio-1926, 846 N.E.2d 16. State Farm's policies sufficiently exclude these claims. This is the same reasoning this Court employed [in] granting the Motion for Summary Judgment of Defendant, Allstate Insurance Company, on January 10, 2006." *Page 5 
 {¶ 5} This appeal followed.
 {¶ 6} The relevant facts of this case are undisputed. Prior to the collision, Jean M. Kudla shared a home with her parents, Thomas (now deceased) and Mary Kudla. Jean Kudla was the named insured under two automobile liability insurance policies issued by appellee State Farm, both of which had liability limits of $100,000 per person and $300,000 per accident with accompanying uninsured/underinsured motorist limits. Having settled their other claims in this case,[2] Jean Kudla and Mary Kudla (as an additional insured under Jean Kudla's policies) sought to recover damages for their loss of consortium with the decedent under the UIM coverage provided by State Farm. These are the claims that were at issue on the parties' cross-motions for summary judgment.
 {¶ 7} In addition to the two policies issued to Jean Kudla, State Farm also issued another policy of motor vehicle liability insurance to Sharon Kudla Brady, the decedent's granddaughter. The parties' motions for summary judgment addressed Sharon Kudla Brady's claim to recover for her loss of consortium with her grandfather under this policy's UIM coverage.
 {¶ 8} Finally, Allstate had issued a policy of motor vehicle liability insurance to Mari Kudla Donnelly, another granddaughter of the decedent. The parties' motions *Page 6 
for summary judgment with respect to Allstate concerned Mari Donnelly's claim for UIM coverage for her loss of consortium with her grandfather.
 Law and Analysis {¶ 9} We review the trial court's orders granting summary judgment de novo, applying the same standard of review the trial court used. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." Zivich v. Mentor Soccer Club, Inc., 82 Ohio St.3d 367,369, 1998-Ohio-389.
 {¶ 10} The terms of the Allstate policy and the State Farm policies include different terms and conditions, so we must analyze them separately.
Allstate Policy (Mari Donnelly)
 {¶ 11} The evidence shows that Allstate initially issued a motor vehicle liability policy to plaintiff-appellant Mari Donnelly or her spouse on January 13, 1999. This policy was renewed every six months; the last renewal before this collision was January 13, 2002.
 {¶ 12} The copy of the insurance policy attached to Allstate's answer is for the policy period from January 13, 2002 to July 13, 2002. The named insured is *Page 7 
"Dennis Donnelly" and the drivers listed on the declarations are "Dennis" and "Mari." Page 4 of the policy declarations notes:
 "You have chosen not to purchase Uninsured Motorists Insurance for Bodily Injury. You can purchase Uninsured Motorists Insurance for Bodily Injury in amounts up to this policy's limits for Bodily Injury under Automobile Liability Insurance at any time by contacting your agent or by calling the Allstate Customer Information Center at 1-800-ALLSTATE (1-800-255-7828)."
 {¶ 13} Appellant urges that this policy amendment was not effective because it was issued in the middle of one of the two-year "guarantee" periods during which the policy could not be amended. Under the version of R.C. 3937.31(A) in effect at the time this policy was originally issued in 1999, "[e]very automobile insurance policy shall be issued for a policy period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years." This statute precludes modification of motor vehicle liability insurance policies during any two-year policy period. Wolfe v. Wolfe,88 Ohio St.3d 246, 2000-Ohio-322.
 {¶ 14} Effective September 21, 2000, the Ohio legislature enacted S.B. 267, which amended R.C. 3937.31 by adding the following subsection (E):
 "(E) Nothing in this section prohibits an insurer from incorporating into a policy any changes that are permitted or required by this section or other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of this section." *Page 8 
 {¶ 15} This court has held that when a two-year policy period began before the effective date of S.B. 267, R.C. 3937.31(E) did not apply; pursuant to the law applicable at the time the two-year policy period began (i.e., Wolfe), the policy could not be modified during that policy period. Storer v. Sharp, Cuyahoga App. No. 86525, 2006-Ohio-1577.[3]
Similarly, in Shea v. Shea, 113 Ohio St.3d 172, 2007-Ohio-1384,4|31, the Ohio Supreme Court determined that, "absent an agreement between the insurer and the insured to amend the policy terms at the six-month renewal point," Wolfe and R.C. 3937.31(A) prevent an insurer from amending the terms of the policy during the two-year policy period, at least when the two-year policy period began before the legislature adopted S.B. 267.
 {¶ 16} Although they inform our opinion here, neither of these cases is directly applicable. Storer and Shea concerned insurance policies whose two-year guarantee period began before the effective date of S.B. 267. The two-year guarantee period in this case began January 13, 2001 — after S.B. 267 (and thus, R.C. 3937.31(E)) became effective. This law was therefore applicable to the Allstate policy in effect at the time of the collision. *Page 9 
 {¶ 17} The insurer in this case claims that, when it renewed the policy on January 13, 2002, it incorporated the changes to R.C. 3937.18
which became effective October 31, 2001 under S.B. 97. These changes make UIM coverage permissive rather than mandatory. Since the Allstate policy did not expressly include UIM coverage, incorporation of this change in the law would remove the implication of coverage by operation of law that existed under the previous version of R.C. 3937.18.
 {¶ 18} R.C. 3937.31(E) does not automatically incorporate statutory changes into an insurance policy. It only says that an insurer is not prohibited from incorporating changes in the policy that are permitted or required by statute, "at the beginning of any policy period within the two-year period set forth in division (A)." This phrase implies that the insurer must still expressly incorporate any changes to the policy at the time of a policy renewal. Statutory changes are not automatically applicable.
 {¶ 19} The policy in this case did not expressly include UIM coverage. That coverage would have been provided by operation of law under the version of R.C. 3937.18 in existence prior to S.B. 97. The insurer specifically noted in the declaration pages of the January 13, 2002 renewal policy that the insured had chosen not to purchase uninsured motorists insurance, but could do so if the insured wished. In our opinion, this notice made clear to the insured that he or she did not have UIM coverage, effectively incorporating the provisions of S.B. 97 *Page 10 
making the offer of UIM coverage permissive rather than mandatory. Therefore, we hold that S.B. 267 allowed Allstate to amend its policy to incorporate statutory changes effective after the beginning of the last two-year guarantee period and Allstate did so, incorporating S.B. 97 by making clear in the declaration pages that the insured did not have UIM coverage.
State Farm Policies (Jean and Mary Kudla and Sharon Kudla Brady)
 {¶ 20} The parties stipulated that State Farm issued two policies to Jean Kudla on March 12, 2002 and June 15, 2005. They further stipulated that State Farm issued a policy to Sharon Kudla Brady on February 3, 2002. These policies contained identical UIM provisions which provide coverage as follows:
 {¶ 21} We will pay damages for bodily injury an insured:
 1. is legally entitled to collect from the owner or driver of the uninsured motor vehicle; or
 2. would have been legally entitled to collect except for the fact that the owner or driver of the uninsured motor vehicle has immunity under Chapter 2744 of the Ohio Revised Code or a diplomatic immunity.
 The bodily injury must be sustained by an insured and caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.
 {¶ 22} Since Mary Kudla and the decedent, Thomas Kudla, resided with Jean Kudla, they were each an "insured" under the UIM coverage provided by *Page 11 
Jean Kudla's policies.[4] However, the loss of consortium for which Jean and Mary Kudla seek compensation is not a "bodily injury." Cf., e.g., Lane v. Grange Mut Cos. (1989), 45 Ohio St.3d 63, 65 (describing loss of consortium as a "nonbodily injury claim"). Appellants argue that their loss of consortium claims arise from a bodily injury to Thomas Kudla, but this argument must fail because the policy does not cover damages "arising from" a bodily injury to an insured; it only covers "damages for bodily injury" "sustained by an insured." Therefore, the damages Mary and Jean Kudla seek for their loss of consortium with Thomas Kudla are not covered by the UIM portion of their policy.
 {¶ 23} This same analysis applies with even greater force to Sharon Brady's claim for loss of consortium under her own State Farm policy. Thomas Kudla was not an insured under her policy, so she cannot argue that her damages arose from a bodily injury to an insured. Loss of consortium is not a "bodily injury."
 {¶ 24} The statutory context of this case is substantially different from that in either Sexton v. State Farm Mut Auto Ins. Co. (1982), 69 Ohio St.2d 432, Moore v. State Auto Mut Ins. Co., 88 Ohio St.3d 27,2000-Ohio-264, or Hedges v. Nationwide Mut Ins. Co., 109 Ohio St.3d 70,2006-Ohio-1926. Each of these *Page 12 
cases involved a different version of R.C. 3937.18(A), but these versions were alike in that they required the insurer to provide (or offer) UIM coverage in some form. The version of R.C. 3937.18(A) in effect at the time State Farm issued the policies in this case, however, did not require the insurer to provide UIM coverage at all. Rather, it allowed, but did not require, an insurer to provide uninsured and/or underinsured motorist coverage in a motor vehicle liability policy. Thus, there is no issue in this case whether the coverage these policies provided met the statutory requirements.
Affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANTHONY O. CALABRESE, JR., P.J., and MARY EILEEN KILBANE, J., CONCUR
[1] Allstate also filed a cross-claim against Wendt, but subsequently dismissed this cross-claim.
[2] Wendt's insurance company paid the limits of her coverage, $50,000, to Thomas Kudla's estate, and $45,000 for injuries to Jean Kudla. State Farm further paid Jean Kudla $20,000 for UIM coverage for bodily injuries she sustained in the collision.
[3] The Ohio Supreme Court has accepted review of a case from the Franklin County Court of Appeals which that court certified to be in conflict with the decision in Storer on the question whether S.B. 97 amendments to R.C. 3937.18 could be incorporated into an insurance policy during a two-year guarantee period which began after the
effective date of S.B. 267 but before the effective date of S.B. 97.Advent v. Allstate Ins. Co., 112 Ohio St.3d 1488, 2007-Ohio-724. We note, however, that in Storer, the two-year guarantee period began three days before the effective date of S.B. 267. Thus, there does not appear to be any actual conflict.
[4] The policy defines a "relative" as a person related to the named insured by blood, marriage or adoption who resides with the named insured. The UIM coverage defines an insured as, inter alia, the named insured, his or her spouse, and their relatives. *Page 1