ADVENT, EXR., APPELLANT, v. ALLSTATE INSURANCE
COMPANY, APPELLEE, ET AL.

[Cite as *Advent v. Allstate Ins. Co.*, 118
Ohio St.3d 248, 2008-Ohio-2333.]

(Nos. 2006–2271 and 2006–2393—Submitted October
17, 2007—Decided May 20, 2008.)

CUPP, J.

{¶ 1} The issue presented in this case is whether the versions of R.C. 3937.18 and 3937.31 in effect on September 12, 2002, permitted modification of an automobile insurance policy's uninsured- and underinsured-motorist (hereinafter "UM") coverage at the beginning of the policy-renewal period within the two-year statutory guarantee period.

{¶ 2} Because the two-year guarantee period began after September 21, 2000, the effective date of 2000 Sub.S.B. No. 267, 148 Ohio Laws, Part V, 11,380, and because the modification occurred after October 31, 2001, the effective date of 2001 Am.Sub.S.B. No. 97, 149 Ohio Laws, Part I, 779, we hold that modification of UM coverage was a change permitted by law. Further, we find that the terms of the automobile insurance policy at issue were in fact modified within that period of time, and we affirm the judgment of the appellate court.

I

{¶ 3} This action arises from an automobile accident on September 28, 2002. Valijean D. Advent died as a result of injuries sustained in the accident. Her husband, Jack Advent, is the executor of her estate. Mr. and Mrs. Advent were the named insureds on an automobile insurance policy issued by Allstate Insurance Company. The liability limits on the policy were $300,000 per person and $500,000 per occurrence. The UM coverage limits were $50,000 per person and $100,000 per accident. The policy was originally purchased on March 12, 1989. The policy remained in effect throughout the two-year guarantee period of March 12, 2001, to March 12, 2003. Within the two-year guarantee periods, the policy

was renewed every six months, including the six-month period of September 12, 2002, to March 12, 2003, which is the policy period when the accident occurred.

{¶ 4} As the executor, Advent settled the estate's claims against the tortfeasor and his automobile insurance company for the bodily-injury liability limit under the tortfeasor's policy, which was $100,000. In settling the claim, Advent reserved the right to pursue UM coverage under his own Allstate policy. Advent made a claim for $200,000 from Allstate on the theory that by operation of law, the amount of UM coverage was equivalent to his policy's liability limits of $300,000, subject to an offset of the $100,000 recovered from the tortfeasor's policy. Advent, as executor, filed his complaint against Allstate to recover that amount.

{¶ 5} The trial court awarded summary judgment to Allstate. It determined that because of recent legislative enactments, Advent was not entitled to UM coverage in an amount equivalent to the Allstate policy's liability limits. The appellate court affirmed. *Advent v. Allstate Ins. Co.*, 169 Ohio App.3d 318, 2006-Ohio-5522, 862 N.E.2d 871. We accepted Advent's discretionary appeal and certified a conflict. *Advent v. Allstate Ins. Co.*, 112 Ohio St.3d 1490, 2007-Ohio-724, 862 N.E.2d 117.

{¶ 6} The certified-conflict question raised in this appeal is: "Can the S.B. No. 97 amendments to R.C. 3937.18 be incorporated into an insurance policy during a two-year guarantee period that commenced subsequent to the S.B. No. 267 amendments to R.C. 3937.18 and R.C. 3937.31, but prior to the S.B. No. 97 amendments?"[1] The propositions of law accepted under discretionary jurisdiction are essentially restatements of the certified-conflict question, which addresses the question of which version of R.C. 3937.18 applies in this case.[2]

## II

{¶ 7} By statute, all automobile insurance policies must be "issued for a period of not less than two years or guaranteed renewable for successive policy periods totaling not less than two years." R.C. 3937.31(A). Recognizing that the laws pertaining to the provisions contained in automobile insurance policies change frequently, we previously interpreted R.C. 3937.31 to mean that insurers are permitted to incorporate statutory changes into an insurance policy only when a two-year guarantee period begins. *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 250–251, 725 N.E.2d 261.

---

1. The conflict case is *Storer v. Sharp*, Cuyahoga App. No. 86525, 2006-Ohio-1577, 2006 WL 832458.

2. The First Proposition of Law is: "R.C. § 3937.18, effective September 21, 2000 (S.B. 267), is the controlling version of the UM statute for this case pursuant to *Ross* and *Wolfe*." The Second Proposition of Law is: "The S.B. 97 amendments to R.C. § 3937.18, effective October 31, 2001, have no application or bearing on the instant cause of action."

{¶ 8} After *Wolfe*, the General Assembly enacted S.B. 267, effective September 21, 2000, expressly permitting insurers to change policies at the beginning of any policy-renewal period *within* a two-year guarantee period. See R.C. 3937.31(E) ("Nothing in this section prohibits an insurer from incorporating into a policy any changes that are permitted or required by this section or other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of this section"). Subsequently, we explored the ramifications of S.B. 267 on *Wolfe*, as applicable to R.C. 3937.31, in *Shay v. Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591. In *Shay*, we concluded that the provisions of S.B. 267 were permissive, and we left *Wolfe* intact. Id. at ¶ 1. Therefore, we did not require an insurer to amend policy terms to incorporate recent legislative changes at a policy-renewal period within the two-year guarantee period. Id.

{¶ 9} Left unchanged by S.B. 267, however, was the general statutory requirement for insurers to offer UM coverage in an amount equal to the liability limits of the policy. See former R.C. 3937.18(A), 148 Ohio Laws, Part V, 11,380 (effective September 21, 2000). An insurer's failure to offer UM coverage within a policy resulted in UM coverage arising by operation of law in an amount equal to the policy's liability limits. *Gyori v. Johnston Coca–Cola Bottling Group, Inc.* (1996), 76 Ohio St.3d 565, 567, 669 N.E.2d 824. UM coverage arose by operation of law if the insurer was unable to demonstrate that it had made a written offer of UM coverage and that its insured had (1) selected in writing UM coverage in a lesser amount or (2) expressly refused UM coverage in writing. Id.; *Mason v. Royal Ins. Co. of Am.*, Stark App. No. 2003 CA 00029, 2003-Ohio-7047, 2003 WL 23009004, ¶ 11, 28.

{¶ 10} Thereafter, the UM coverage laws were further amended by S.B. 97, effective October 31, 2001. S.B. 97 rewrote R.C. 3937.18, with the express intention of superseding the holdings of this court in "cases previously superseded by * * * S.B. 267" and, among other named cases, *Gyori*, 76 Ohio St.3d 565, 669 N.E.2d 824. Section 3(D) and (E), S.B. 97, 149 Ohio Laws, Part I, 789–790. In addition to eliminating "any requirement of a written offer, selection, or rejection form," this amendment was also intended to "[e]liminate the possibility of uninsured motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages being implied as a matter of law in any insurance policy." Id. at 788, Section 3(B)(4) and (2).[3]

---

3. {¶ a} R.C. 3937.18(A) now reads:

{¶ b} "Any policy of insurance delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state that insures against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle, may, but is not required to, include uninsured

{¶ 11} The cumulative effect of the General Assembly's amendments to R.C. 3937.18 in S.B. 267 and S.B. 97 leads us to conclude that insurers may incorporate any changes permitted or required by the Revised Code at the beginning of any policy-renewal period on or after October 31, 2001 (the effective date of S.B. 97) within the policy's two-year guarantee period that began on or after September 21, 2000 (the effective date of S.B. 267).

{¶ 12} Moreover, modification of the UM coverage terms of an automobile insurance policy is a change permitted or required by the Revised Code, after October 31, 2001 (the effective date of S.B. 97), at the beginning of any policy-renewal period within the two-year guarantee period that began after September 21, 2000 (the effective date of S.B. 267).

{¶ 13} In light of the foregoing, we resolve the certified-conflict question in the affirmative and reject the two propositions of law.

## III

{¶ 14} The policy that the Advents purchased from Allstate had a two-year guarantee period from March 12, 2001, through March 11, 2003. It is not disputed that the UM statute applicable to the Advent policy reflected the changes enacted by S.B. 267, effective September 21, 2000. As a result, if the insured consented, Allstate could incorporate changes permitted or required by the Revised Code into the existing policy at the beginning of any policy-renewal period within the two-year guarantee period. See R.C. 3937.31(E); *Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, at ¶ 1.

{¶ 15} Advent contends that notwithstanding the amendment by S.B. 267, UM coverage still arose by operation of law in the amount of the liability limits of the policy if a proper offer and selection or rejection of UM coverage in writing could not be demonstrated by the insurer. Advent's argument, however, overlooks the application of S.B. 97, effective October 31, 2001. The provisions of S.B. 97, which include the rewriting of portions of R.C. 3937.18, are "changes that are permitted or required" by the Revised Code to be incorporated into existing policies, by virtue of S.B. 267, at any renewal, including any renewal period within the two-year guarantee period if the insurer and insured agree to do so. R.C. 3937.31(E); *Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, at ¶ 1.

{¶ 16} At the renewal of the six-month policy period immediately prior to the six-month policy period during which the accident occurred (the policy-renewal period of March 12, 2002, to September 12, 2002), Allstate included an "Important Notice" with its "Renewal Auto Policy Declarations" information indicating that

---

motorist coverage, underinsured motorist coverage, or both uninsured and underinsured motorist coverages."

the method of selecting UM coverage had changed.[4] The same notice, under the heading of "Important Information and Coverage Information," stated, "The coverage limits you have chosen for Uninsured Motorists Insurance for Bodily Injury are less than your limits for Bodily Injury under Automobile Liability Insurance." The Advents were advised to contact their agent or Allstate if they wished to increase their UM limits. The Advents neither objected to this change nor acted to modify the UM limits specifically listed on the policy declarations page. Rather, the insurance coverage with Allstate was maintained at the stated policy amounts.

{¶ 17} When the Advents renewed their policy for the final six-month policy period of the two-year guarantee period, the Renewal Auto Policy Declarations again informed the Advents that their chosen UM limits were less than their liability limits and advised them to contact their agent or Allstate if they wished to increase their UM limits. Again, the Advents maintained their insurance coverage with Allstate at the stated policy amounts.

{¶ 18} Admittedly, the notification of these changes in the Advents' policies contained minimal explanation. However, we believe that the notices contained sufficient information to put the Advents on notice that the provisions regarding UM coverage in the policy had changed, that the UM coverage was as stated on the policy declarations page, and that action on their part was necessary to modify the stated UM limits. By failing to take any action to modify the stated UM coverage limits, the Advents consented to the changes in their policy and to the express coverage limits of $50,000 per person and $100,000 per accident.

{¶ 19} In summary, S.B. 267 permits but does not require insurers to incorporate into automobile insurance policies changes permitted or required by the Revised Code during any policy-renewal period within the two-year guarantee

---

4. {¶ a} The "Important Notice" stated:

{¶ b} "We'd like you to know that we've changed the process for selecting and making changes to Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage.

{¶ c} "Effective immediately, you can add or remove Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage and increase or decrease your limits under Uninsured Motorists Insurance for Bodily Injury by simply calling your Allstate representative. There will be no forms to sign.

{¶ d} "Please refer to the enclosed Policy Declarations to determine if your policy currently has Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage.

{¶ e} "If Uninsured Motorists Insurance for Bodily Injury or Uninsured Motorists Insurance—Property Damage is not included in your policy and you would like to purchase it, or if you would like to increase or decrease the Uninsured Motorists Insurance for Bodily Injury limits shown on the Policy Declarations, please feel free to contact your agent or the Allstate Customer Information Center * * *."

period. S.B. 97 repealed the requirement to offer UM coverage and eliminated any requirement to prove offers, selections, or rejections in writing. The consequence of these two statutory changes is that the possibility of UM coverage "being implied as a matter of law in any insurance policy" is eliminated. Section 3(B)(2), S.B. 97, 149 Ohio Laws, Part I, 788.

{¶ 20} Further, Allstate's automobile insurance policy with the Advents was renewed every six months within their two-year guarantee period; the provisions of S.B. 97 governing UM coverage were incorporated into the Advent policy during one of the renewal periods prior to the accident; and the coverage available to the Advents at the time of the accident is determined by that policy with the incorporated terms.

{¶ 21} Because the UM coverage limits in effect on the date of the accident were $50,000 per person and $100,000 per occurrence, and not $300,000 per person and $500,000 per occurrence, we affirm the judgment of the court of appeals.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and LANZINGER, JJ., concur.

PFEIFER, J., dissents.

---

**PFEIFER, J., dissenting.**

{¶ 22} I dissent. I would hold that a unilateral reduction in underinsured-motorist coverage constituted a cancellation of the policy within the two-year guarantee period, which is forbidden by R.C. 3937.31(A). Moreover, the notice given by Allstate in this case was deficient; it in no way informed the Advents that their UM coverage dropped from $300,000/$500,000 to $50,000/$100,000.

{¶ 23} At the time the two-year policy period started on March 12, 2001, the Advents were insured for UM coverage up to their $300,000/$500,000 liability limits by operation of law. There is no evidence in the record that the Advents refused UM coverage up to the amount of their liability limits.

{¶ 24} For the six-month renewal period starting on September 12, 2002, Allstate purported to reduce the amount of the Advents' coverage. A reduction in coverage constitutes a cancellation pursuant to R.C. 3937.31(A):

{¶ 25} "Where renewal is mandatory, 'cancellation,' as used in sections 3937.30 to 3937.39 of the Revised Code, includes refusal to renew a policy with at least the coverages, included insureds, and policy limits provided at the end of the next preceding policy period."

{¶ 26} Allstate did not renew the coverage with the same policy limits that had been in effect at the end of the preceding policy period. It therefore canceled the policy. An insurer may cancel a policy only under certain circumstances set forth in R.C 3937.31(A), including misrepresentation, loss of driving privileges, and nonpayment of the premium. None of those circumstances existed in this case. R.C. 3937.31(E) allows an insurer to incorporate into a policy "any changes that are permitted or required by this section or other sections of the Revised Code at the beginning of any policy period within the two-year period set forth in division (A) of this section." Cancellation, as defined by R.C. 3937.31(A), is not permitted or required by that statutory section.

{¶ 27} In *Shay v. Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, this court held that statutory changes inuring to the benefit of the insured do not immediately take effect at the six-month renewal periods within the two-year guaranteed period. In *Shay*, this court held that a statute invalidating the exclusion of a named insured's vehicle from the definition of an uninsured motor vehicle was not incorporated into the policy at the six-month renewal. Instead, this court held that the changes brought about by statute were permissive, requiring an agreement between the parties for incorporation into the policy. This court held:

{¶ 28} "We thus hold that absent an agreement between the insurer and the insured to amend the policy terms at the six-month renewal point, R.C. 3937.31(A) and our decision in *Wolfe v. Wolfe* (2000), 88 Ohio St.3d 246, 725 N.E.2d 261, prevent an insurance company from amending the terms of its policy to increase the amount of coverage it provides, at the six-month point of renewal." *Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, ¶ 31.

{¶ 29} The majority seems to forget the *Shay* requirement of "an agreement between the insurer and the insured to amend the policy terms." From the *Shay* holding, one would conclude that an endorsement would be required to effectuate a change. But the majority determines that the Advents, by failing to take action to modify the stated UM coverage limits, consented to the changes in their policy.

{¶ 30} This conclusion is based upon the "Important Notice" Allstate sent to the Advents and its notification to the Advents at the renewal period that their UM limits were lower than their liability limits. The "Important Notice" reads:

{¶ 31} "We'd like to let you know that we've changed the process for selecting and making changes to Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage.

{¶ 32} "Effective immediately, you can add or remove Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage and increase or decrease your limits under Uninsured Motorists Insurance

for Bodily Injury by simply calling your Allstate representative. There will be no forms to sign.

{¶ 33} "Please refer to the enclosed Policy Declarations to determine if your policy currently has Uninsured Motorists Insurance for Bodily Injury and Uninsured Motorists Insurance—Property Damage.

{¶ 34} "If Uninsured Motorists Insurance for Bodily Injury or Uninsured Motorists Insurance—Property Damage is not included in your policy and you would like to purchase it, or if you would like to increase or decrease the Uninsured Motorists Insurance for Bodily Injury limits shown on the Policy Declarations, please feel free to contact your agent or the Allstate Customer Information Center * * *."

{¶ 35} The notice was deficient. It does not mention that Allstate is incorporating into the policy a recent legislative enactment. It does not notify the Advents of *changes* in the amount of their UM coverage. Instead, the "Important Notice" reads more like the announcement of Allstate's self-created new system for easing the process for changing UM coverage. The notice does not state that any reduction in coverage amounts has occurred or will occur. The notice does not set forth what the law was before the passage of 2001 Am.Sub. S.B. No. 97 or how that enactment has shifted the law. There is no alerting of the insured that there has been any change in the policy itself. There is no notice that although the declarations page continues to state the UM coverage as $50,000/$100,000, the true value of that coverage has decreased from limits that had been $300,000/$500,000.

{¶ 36} The same can be said of the notices included with the renewals that told the Advents that their UM limits were less than their liability limits. Those notices do not indicate any *change* in the amount of coverage available. None of Allstate's notices could have indicated to the Advents that they were agreeing to any changes in their policy limits.

{¶ 37} For all of the above reasons, the law in effect at the beginning of the two-year guarantee period was in effect at the time of the accident. By operation of law under former R.C. 3937.18(A), the Advents' UM coverage limits matched those of their liability coverage.

---

John M. Gonzales, L.L.C., and John M. Gonzales, for appellant.

Lane, Alton & Horst, L.L.C., Rick E. Marsh, and Monica L. Waller, for appellee.

Mark Segreti Jr.; and Paul W. Flowers Co., L.P.A., and Paul W. Flowers, urging reversal for amicus curiae Ohio Academy of Trial Lawyers.

Gallagher, Gams, Pryor, Tallan & Littrell, L.L.P., and James R. Gallagher, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.