ANDERSON *v.* BARCLAY'S CAPITAL REAL ESTATE, INC.,

D.B.A. HOMEQ SERVICING.

[Cite as *Anderson v. Barclay's Capital Real Estate, Inc.,* 136 Ohio St.3d 31,

2013-Ohio-1933.]

*Certified questions of state law—The servicing of a borrower's residential mortgage loan is not a "consumer transaction" as defined in R.C. 1345.01(A)—An entity that services a residential mortgage loan is not a "supplier" as defined in R.C. 1345.01(C).*

(No. 2011-0908—Submitted February 26, 2013—Decided May 14, 2013.)

ON ORDER from the United States District Court for the Northern District of Ohio, Western Division, Certifying Questions of State Law, No. 3:09-cv-02335-JGC.

_____

SYLLABUS OF THE COURT

1. The servicing of a borrower's residential mortgage loan is not a "consumer transaction" as defined in R.C. 1345.01(A).

2. An entity that services a residential mortgage loan is not a "supplier" as defined in R.C. 1345.01(C).

_____

O'CONNOR, C.J.

{¶ 1} In this case, which is before us on the certification of state-law questions by the United States District Court for the Northern District of Ohio, Western Division, we address whether the Ohio Consumer Sales Practices Act ("CSPA"), codified in R.C. Chapter 1345, applies to the servicing of residential mortgage loans. We determine that it does not.

RELEVANT BACKGROUND

{¶ 2} The federal court provided the following facts, circumstances, and allegations from which the questions of law arise:

**{¶ 3}** Barclays Capital Real Estate, Inc., doing business as HomEq Servicing ("HomEq"), defendant in the underlying action and petitioner here, is a "mortgage servicer" that engages in the business of servicing residential mortgages of individuals. HomEq is not a bank, financial institution, or any other entity defined in R.C. 5725.01.

**{¶ 4}** HomEq "accepts, applies and distributes mortgage loan payments and other fees, penalties and assessments, and in connection with so doing exercises discretion regarding the fees charged or applied to a particular mortgage loan account." HomEq is paid for its loan administration and other services "from the payment stream generated by the consumers' residential mortgages."

**{¶ 5}** HomEq "maintains customer service departments and call centers to which Ohio residents with loans being serviced by HomEq are directed to call with questions [or] concerns about their mortgage loans" and "directs customers who are in default or danger of default to contact it for options concerning loss mitigation or loan modification and further holds itself out as having authority to make substantive decisions regarding which customers, if any, will receive loan modification agreements or loss mitigation assistance." HomEq "handles consumer disputes regarding their mortgage loans," "negotiates and executes loan modification, forbearance and other agreements directly with customers," and "makes customer service related promises on its website to which consumers are directed by the servicer." It also "purchases homeowner's insurance on behalf of, and at the expense of, consumers who HomEq believes not to have purchased insurance required by the note and mortgage."

**{¶ 6}** The federal court determined that the interpretation of R.C. 1345.01(A) and (C) may be determinative of the case pending before it. Finding no controlling precedent on the determinative issue in Ohio case law, the federal court certified the following questions to us for answers:

1. Does the servicing of a borrower's residential mortgage loan constitute a "consumer transaction" as defined in the Ohio Consumer Sales Practices Act, R.C. 1345.01(A)?

2. Are entities that service residential mortgage loans "suppliers * * * engaged in the business of effecting or soliciting consumer transactions" within the meaning of the Ohio Consumer Sales Practices Act, R.C. § 1345.01(C)?

{¶ 7} Before us, Sondra Anderson, plaintiff in the underlying action, contends that mortgage servicing is a "consumer transaction" because the mortgage servicer provides a number of services to borrowers, including accepting payments and working with borrowers to obtain loan modifications. She asserts that we must answer the certified questions in the affirmative. But HomEq counters that mortgage servicers perform services for financial institutions, not for borrowers, and therefore the transactions are commercial in nature and are not covered by the CSPA. It thus avers that we must answer the questions in the negative. For the reasons that follow, we agree with HomEq.

**ANALYSIS**

{¶ 8} The CSPA prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions whether they occur before, during, or after the transaction. R.C. 1345.02(A) and 1345.03(A); *Williams v. Spitzer Autoworld Canton, L.L.C.*, 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 10. The CSPA defines a "consumer transaction" to be

a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things.

"Consumer transaction" does not include transactions between persons, defined in sections 4905.03 and 5725.01 [financial institution defined] of the Revised Code, and their customers, except for transactions involving a loan made pursuant to sections 1321.35 to 1321.48 of the Revised Code and transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers; transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code; transactions between certified public accountants or public accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients; and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services.

R.C. 1345.01(A).

{¶ 9} The CSPA is remedial in nature, having been designed to compensate for incomplete consumer remedies available at common law. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990); *see* Roberts & Martz, *Consumerism Comes of Age: Treble Damages and Attorney Fees in Consumer Transactions—The Ohio Consumer Sales Practices Act*, 42 Ohio St.L.J. 927, 928 (1981). Thus, we must liberally construe the statute in favor of the consumer. *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, 855 N.E.2d 825, ¶ 11, quoting *Einhorn* at 29; *see also* R.C. 1.11.

{¶ 10} Notably, however, the CSPA has no application in a "pure" real estate transaction. *Brown v. Liberty Clubs, Inc.*, 45 Ohio St.3d 191, 193, 543 N.E.2d 783 (1989). In fact, real estate transactions are excluded from the statute's

4

definition of "consumer transaction." R.C. 1345.01(A); *see Shore W. Constr. Co. v. Sroka*, 61 Ohio St.3d 45, 48, 572 N.E.2d 646 (1991); *Heritage Hills, Ltd. v. Deacon*, 49 Ohio St.3d 80, 551 N.E.2d 125 (1990).

### *Is servicing of a borrower's residential mortgage loan a "consumer transaction"?*

{¶ 11} The first question asks whether the servicing of a borrower's residential mortgage loan constitutes a "consumer transaction" as defined in the Ohio Consumer Sales Practices Act, R.C. 1345.01(A)? It does not.

{¶ 12} In the servicing of a real estate mortgage, one essential element of R.C. 1345.01(A) is not met: there is no sale, lease, assignment, award by chance, or other transfer of a service to a consumer.

{¶ 13} Mortgage servicing is a contractual agreement between the mortgage servicer and the financial institution that owns both the note and mortgage. Mortgage servicing is carried out in the absence of a contract between the borrower and the mortgage servicer. We recognize that the mortgage servicer's duties may involve direct and indirect interactions with borrowers on behalf of the financial institution. Sometimes the mortgage servicer may even assist the borrower in modifying the terms of the note, but the mortgage servicer undertakes the negotiation not for itself but on behalf of the financial institution.

{¶ 14} These interactions do not satisfy the language found in R.C. 1345.01(A). Instead, mortgage servicing, similar to appraisal services and title services, is a "collateral service" associated with a pure real estate transaction. Except for the transactions specified in the statute, the CSPA does not apply to "collateral services that are solely associated with the sale of real estate and are necessary to effectuate a 'pure' real estate transaction." *U.S. Bank v. Amir*, 8th Dist. No. 97438, 2012-Ohio-2772, ¶ 42-43, citing *Hurst v. Ent. Title Agency, Inc.*, 157 Ohio App.3d 133, 2004-Ohio-2307, 809 N.E.2d 689, ¶ 34-35 (holding that the escrow services involved were collateral services related to the real estate

5

transaction and that they were therefore not subject to the CSPA), citing *Colburn v. Baier Realty & Auctioneers*, 11th Dist. No. 2002-T-0161, 2003-Ohio-6694, ¶ 16. *See also Hanlin v. Ohio Builders & Remodelers, Inc.*, 212 F.Supp.2d 752, 757 (S.D.Ohio 2002) (closing services were "part and parcel of the real estate transaction" and thus outside the CSPA).

{¶ 15} Moreover, transactions between mortgage-service providers and homeowners are not "consumer transactions" within the meaning of the CSPA because there is no "transfer of an item of goods, a service, a franchise, or an intangible, to an individual." *See* R.C. 1345.01(A) (" 'Consumer transaction' means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things"). A financial institution may contract with a mortgage servicer to service the loan, but the mortgage servicer does not transfer a service to the borrower, which is what would be required in order to trigger the CSPA.

{¶ 16} The term "transfer" is not defined in the CSPA, so we must give it its plain and ordinary meaning. *See State v. Anthony*, 96 Ohio St.3d 173, 2002-Ohio-4008, 772 N.E.2d 1167, ¶ 11. *Black's Law Dictionary* defines the term to mean "[t]o sell or give." *Black's Law Dictionary* 1636 (9th Ed.2009).

{¶ 17} Here, the mortgage servicer neither sells nor gives the borrower the services it provides to the owner of the mortgage and note. A mortgage servicer provides a service to a financial institution, but providing such a service to a financial institution is neither analogous to transferring a service to a borrower nor sufficient to impose liability under the CSPA. *See Rossbach v. FBS Mtge. Corp.*, Minn.App. Nos. C3-97-1622 and C9-97-1852, 1998 WL 156303, *3 (Apr. 7, 1998) (affirming order granting summary judgment to mortgage servicer on state consumer-protection-act claims because the mortgage servicer operated through a contract with the entity that owned the mortgage on plaintiff's home). *Accord*

6

*Indep. Glass Assn., Inc. v. Safelite Group, Inc.,* D.Minn. No. 05-238, 2005 WL 2093035 *7 (Aug. 26, 2005) (dismissing claim of violation of state consumer-protection laws where the defendant was a third-party administrator who was "fulfilling a contractual obligation" to insurers and noting that the administrator "provides the service for the benefit of the insurance companies" rather than the insureds, and thus there was no service provided to the consumer). Thus, under a plain reading of the statute, the servicing of a borrower's residential mortgage loan is not a "consumer transaction" as defined in R.C. 1345.01(A). The statute simply cannot be read to cover instances in which a financial institution contracts with an entity to service its loans and mortgages.

{¶ 18} Our conclusion is buttressed by the commentary to the Uniform Consumer Sales Practices Act, on which the CSPA is modeled. The commentary states, "On the assumption that land transactions frequently are, and should be, regulated by specialized legislation, they are excluded altogether." 7A, Part I, National Conference of Commissioners on Uniform State Laws, *Uniform Laws Annotated, Business and Financial Laws*, Uniform Consumer Sales Practices Act, Official Comment to Section 2(1), at 73 (Master Ed.2002). The transactions presented here include the acceptance and application of mortgage payments and management of loans in default. Those transactions do not cease to be part of the land transaction simply because an entity that did not originate the loan and mortgage executes them.

{¶ 19} Further, other states that have enacted a consumer-sales-practices act based on the uniform act included specific language referring to land transactions in the statutes when they wanted real estate transactions to be covered. *See, e.g.,* Kan.Stat.Ann. 50-624(c) and (j) (defining "consumer transaction" to mean "disposition for value of property" and defining "property" to include real estate). Ohio did not. That omission is important.

**{¶ 20}** In past decisions interpreting the CSPA, we have taken note of the General Assembly's decision not to include certain language. For example, in *Heritage Hills*, we rejected a residential tenant's attempt to bring her complaint against her landlord within the ambit of R.C. Chapter 1345. In so doing, we recognized that the General Assembly had considered, but not enacted, a bill that would have included the lease of real property within the definition of "consumer transaction." 49 Ohio St.3d at 82-83, 551 N.E.2d 125.

**{¶ 21}** Here, we recognize that the General Assembly has repeatedly amended R.C. Chapter 1345 to reach specific transactions that take place in the mortgage industry. But it has chosen not to incorporate mortgage services within the expanded definition of transactions subject to CSPA's provisions.

**{¶ 22}** For example, the General Assembly, through Am.Sub.S.B. No. 185 ("S.B. 185"), amended R.C. 1345.01(A), effective in 2007, to expressly include three types of entities actively engaged in the residential mortgage market that were not previously subject to the CSPA: loan officers, mortgage brokers, and nonbank mortgage lenders. But, notably, the legislature has not expanded the application of the CSPA to include mortgage servicers.

**{¶ 23}** Indeed, after S.B. 185 passed, the 128th General Assembly considered a bill that would have brought more extensive regulation to mortgage servicers and included them within the ambit of the CSPA. Am.Sub.H.B. No. 3. That bill was not enacted, however.

**{¶ 24}** We will not speculate as to why the bill failed. But we do take notice of the fact that the legislative branch considered and rejected an amendment to the statutory scheme that would have specifically made mortgage servicers liable under the CSPA.

**{¶ 25}** We conclude that the General Assembly's rejection of the proposed amendment supports our conclusion that mortgage servicers are not

covered by the current language of R.C. Chapter 1345.[1] If the General Assembly is dissatisfied with our interpretation, it may amend the Revised Code. *See, e.g.*, *Shay v. Shay*, 113 Ohio St.3d 172, 2007-Ohio-1384, 863 N.E.2d 591, ¶ 25 (noting that within six months of a decision interpreting R.C. 3937.31, the General Assembly responded by amending R.C. 3937.31).

**{¶ 26}** We turn now to the second certified question.

### *Is a mortgage servicer a "supplier"?*

**{¶ 27}** The second question presented asks, "Are entities that service residential mortgage loans, 'suppliers * * * engaged in the business of effecting or soliciting consumer transactions' within the meaning of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01(C)?" We hold that they are not.

**{¶ 28}** Anderson's argument centers on her belief that because servicers like HomEq engage in transactions with borrowers, and essentially function as collection agencies, they are "suppliers" under the CSPA. But the term "supplier" under the CSPA does not include a mortgage servicer.

**{¶ 29}** " 'Supplier' means a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). The terms "effecting" and "soliciting" are not defined by the statute, so we give the terms their plain and ordinary meanings.

**{¶ 30}** "Effect" is defined as "[t]o bring about; to make happen." *Black's Law Dictionary* at 592. "Solicitation" is defined as "[t]he act or an instance of requesting or seeking to obtain something; a request or petition." *Black's* at 1520.

---

1. Amici curiae, including legal-aid organizations that are concerned about the number of foreclosures that continue to take place in Ohio, raise some thought-provoking arguments. And we accept for the sake of argument that regulation may be warranted. But it is the legislature's role, not ours, to bring mortgage servicers within the CSPA's scope.

Thus, under the CSPA, "suppliers" are those that cause a consumer transaction to happen or that seek to enter into a consumer transaction.

{¶ 31} Here, HomEq does not engage in the business of effecting or soliciting consumer transactions. The residential mortgage transaction is a transaction that occurs between the financial institution and the borrower. Mortgage servicers are not part of this transaction. And simply servicing the mortgage is not causing a consumer transaction to happen. Similarly, mortgage servicers do not seek to enter into consumer transactions with borrowers.

{¶ 32} We therefore have little trouble concluding that an entity that services a residential mortgage loan is not a "supplier" as defined in R.C. 1345.01(C).

## CONCLUSION

{¶ 33} We answer both of the certified state-law questions in the negative. Mortgage servicing is not a consumer transaction under the CSPA, and an entity that services a residential mortgage loan is not a "supplier" under the CSPA.

So answered.

O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.

FRENCH, J., concurs in judgment only.

PFEIFER and O'NEILL, JJ., dissent.

————————————

**O'NEILL, J., dissenting.**

{¶ 34} I dissent from the majority's decision answering the certified questions in the negative. I believe that this court should answer the certified questions in the affirmative and hold that the Consumer Sales Practices Act ("CSPA") applies to mortgage-loan servicers.

{¶ 35} In this case, and in many like it, a residential homebuyer contracted with a lender to provide her with a residential real estate loan. Subsequent to executing the note and mortgage for the property, the lending

10

institution entered into an agreement with a mortgage servicer, HomEq Servicing. HomEq receives payment for its services by keeping a portion of the consumer's residential mortgage payments. Thus, the lender is contractually responsible for paying HomEq, but the payment is incorporated into the interest rate and fees paid by the consumer, in effect transferring the cost of HomEq's services to the consumer. As described by the majority opinion, HomEq's services are extensive and primarily involve interaction with the consumer. But HomEq is not a party to the mortgage contract, and although the consumer does not necessarily want to have any sort of relationship with HomEq, he or she has no choice in the matter.

{¶ 36} According to Sondra Anderson, the plaintiff/consumer in the underlying case, her complaint alleges that HomEq failed to apply her mortgage payments in the manner required by her note and mortgage, failed to provide accurate information in response to her repeated inquiries about her residential mortgage loan, and accepted payments without acknowledging them and without forwarding them to her mortgage-loan lender. Thus, she was subject to HomEq's neglect and/or malfeasance, and yet she had no means of recourse because she did not have a contractual relationship with HomEq.

{¶ 37} Although some federal district courts have interpreted Ohio's CSPA in similar cases, the federal court reviewing the present case determined that there was no controlling precedent on the definitions of "consumer transaction" and "supplier" in the context of mortgage-loan servicers. I agree with Anderson's assertion that mortgage-loan-servicing companies transfer their services to the consumers, because the provided services do not constitute part of the original real estate transaction and because the plain language of R.C. 1345.01(A) does not provide any exceptions for mortgage servicers.

{¶ 38} R.C. 1345.01(A) provides as follows:

"Consumer transaction" means a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things. "Consumer transaction" does not include transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers, except for transactions involving a loan made pursuant to sections 1321.35 to 1321.48 of the Revised Code and transactions in connection with residential mortgages between loan officers, mortgage brokers, or nonbank mortgage lenders and their customers; transactions involving a home construction service contract as defined in section 4722.01 of the Revised Code; transactions between certified public accountants or public accountants and their clients; transactions between attorneys, physicians, or dentists and their clients or patients; and transactions between veterinarians and their patients that pertain to medical treatment but not ancillary services.

{¶ 39} To summarize the foregoing language, the statute establishes that a consumer transaction includes transactions that involve the provision of goods, services, or intangibles to individual consumers for personal, family, or household purposes. The statute then provides exceptions. Those exceptions include transactions between a customer and a financial institution, a dealer in intangibles, or an insurance company. The statute then provides an exception to those exceptions: even if the entity is a financial institution or other exempted entity, the transaction nonetheless constitutes a consumer transaction if it is a particular kind of short-term loan under $500, or if it is a transaction involving a home construction contract or a transaction in connection with a residential mortgage

involving an interaction between a customer and his or her loan officer, mortgage broker, or nonbank mortgage lender. Finally, the statute exempts transactions between certain professionals and their clients or patients, but those transactions are not pertinent to the present controversy.

{¶ 40} The CSPA is a remedial law, so it must be liberally construed in favor of the consumer. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29, 548 N.E.2d 933 (1990), citing R.C. 1.11. HomEq is not a financial institution, dealer in intangibles, or an insurance company, nor does it fit within the definitions of loan officer, mortgage broker, or nonbank mortgage lender. Thus HomEq does not fit within the exceptions for any particular entities. Because mortgage servicers are not excluded by the statute, they must be included, and their services therefore constitute consumer transactions that are covered by the CSPA.

{¶ 41} The majority's primary holding is that HomEq's collection of mortgage payments and other services cannot be considered consumer transactions, because the consumers' only contractual relationship is with the lending institutions and because the underlying transaction that HomEq's services facilitate is the original real estate transaction. Thus, the majority focuses entirely on the transactions rather than on the parties to the transactions. However, the language of R.C. 1345.01(A) demonstrates that the nature of the underlying transaction does not matter as much as the identity of the commercial entity involved in the transaction. Specifically, the statute provides that the transaction between a consumer and a "nonbank mortgage lender" qualifies as a consumer transaction, even though that relationship will obviously involve a pure real estate transaction.

{¶ 42} Further, in many federal decisions that address the applicability of Ohio's CSPA to mortgage-loan servicers, the courts have held that the CSPA may apply. *Dowling v. Litton Loan Servicing, L.P.*, S.D.Ohio No. 2:05-CV-0098, 2006 WL 3498292, at *13-14 (Dec. 1, 2006); *Kline v. Mtge. Electronic*

*Registration Sys., Inc.*, S.D.Ohio No. 3:08cv408, 2011 WL 1233642, at *4-5 (Mar. 29, 2011); *Jent v. BAC Home Loans Servicing, L.P.*, S.D.Ohio No. 1:10-CV-00783, 2011 WL 2971846, at *3 (July 21, 2011); *Munger v. Deutsche Bank*, N.D.Ohio No. 1:11-CV-00585, 2011 WL 2930907, at *9 (July 18, 2011); *Sims v. CitiMortgage, Inc.*, N.D.Ohio No. 1:12 CV 00096, 2013 WL 310236, at *5 (Jan. 25, 2013). These decisions rely on the principle of liberal application in favor of the consumer or analogize mortgage servicers to consumer-debt collectors. "Ohio courts have long held that entities engaging in the collection of consumer debts are suppliers." *Kline* at *4, citing *Celebrezze v. United Research, Inc.*, 19 Ohio App.3d 49, 482 N.E.2d 1260 (9th Dist.1984).

{¶ 43} By way of comparison, the evolution of court holdings on the issue whether debt collectors fall within the purview of the CSPA confirms that the appropriate focus in this analysis is on the identity of the commercial entity involved in the transaction instead of the nature of the original underlying transaction. Early federal decisions on the subject had determined that debt collecting did not involve consumer transactions under the Ohio CSPA if the original lender was a financial institution, even when the debt collection took place after the debt had been transferred to a debt collector. *See Gionis v. Javitch, Block & Rathbone*, 405 F.Supp.2d 856, 869 (S.D.Ohio 2005). Later, federal courts rejected that view and determined that an assignee of a debt who is not a financial institution has no entitlement to the financial-institution exemption to the CSPA. The reasoning is compelling. A debt collector is not a financial institution, much as a mortgage servicing company is not as well. *See Lee v. Javitch, Block & Rathbone, L.L.P.*, 522 F.Supp.2d 945, 956 (S.D.Ohio 2007). The holding that a nonexempted entity cannot hide behind the exempted status of the original entity is supported by the fact that "[a] bank customer has other adequate remedies if a bank should engage in deceptive or unfair conduct in making a loan or issuing a credit card. But if the financial institution sells a past due or defaulted debt at a

14

deep discount to an unrelated party, whose only business is debt collection, the sound policy for the financial institution exemption evaporates." *Id.*

{¶ 44} In fact, the other exceptions to the CSPA are also justified by the fact that the transactions involved are heavily regulated by other statutory schemes. *See, e.g., Heritage Hills, Ltd. v. Deacon*, 49 Ohio St.3d 80, 83, 551 N.E.2d 125 (1990) (landlord-tenant lease agreements are already well regulated by R.C. Chapter 5321); 7A, Part I, National Conference of Commissioners on Uniform State Laws, *Uniform Laws Annotated, Business and Financial Laws*, Uniform Consumer Sales Practices Act, Official Comment to Section 2(1), at 73 (Master Ed.2002) (the sale of real estate is completely excluded from the CSPA "[o]n the assumption that land transactions frequently are, and should be, regulated by specialized legislation"). The fact that mortgage-loan servicing is not so regulated is all the more reason to find that the CSPA applies.

{¶ 45} Given the foregoing history of protecting consumers when they are forced into the hands of third-party debt collectors, it is wholly appropriate to also protect residential-mortgage-loan borrowers when they are forced into the hands of mortgage-loan servicers. I would therefore respond to the first certified question by holding that the servicing of a borrower's residential mortgage loan constitutes a "consumer transaction" as defined in R.C. 1345.01(A).

{¶ 46} The second certified question asks whether a mortgage-loan servicer constitutes a "supplier" in a consumer transaction, as defined in R.C. 1345.01(C). That statute defines a supplier as an entity that effects consumer transactions. Because I believe that the correct answer to the first certified question is yes, i.e., the transactions performed by a mortgage-loan servicer are consumer transactions, I would also answer the second question in the affirmative, i.e., a mortgage-loan servicer is a supplier in a consumer transaction.

{¶ 47} The scope of the term "consumer transaction" is broad, and its exceptions are very specific and limited. HomEq's services clearly do not fit

within any of the exceptions articulated in R.C. 1345.01. We owe it to the public to curb the activities of unregulated entities when it is the consumers, and only the consumers, who are left homeless and in dire financial straits as a result of the entities' unscrupulous and/or negligent activities. To do otherwise shirks our duty pursuant to R.C. 1.11 to liberally construe the CSPA in favor of the consumer. I must therefore dissent.

_____

Murray & Murray Co., L.P.A., John T. Murray, Leslie O. Murray, and Michael J. Stewart, for respondent.

Porter, Wright, Morris & Arthur, L.L.P., James D. Curphey, Kathleen M. Trafford, and L. Bradfield Hughes; and Buckley Sandler, L.L.P., and Benjamin B. Klubes, for petitioner.

Crawford, Lowry & Associates, L.L.C., and G. Ian Crawford; and Wells Law Office, Inc., and Amy L. Wells, urging that the certified questions be answered in the affirmative for amicus curiae Ohio Association for Justice.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor, and Jeffrey R. Loeser, Assistant Attorney General, urging that the certified questions be answered in the affirmative for amicus curiae the Ohio Attorney General.

Linda Cook, Lauren E. Dreshman, Tammy L. Greenwald, Aneel L. Chablani, and Andrew D. Neuhauser, urging that the certified questions be answered in the affirmative for amici curiae Ohio Legal Services Programs, Coalition on Homelessness and Housing in Ohio, Toledo Fair Housing Center, Miami Valley Fair Housing Center, and the National Consumer Law Center.

_____